United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMONETTE D. FORTO,<br>    Plaintiff,<br>v.<br>CAPITAL ONE BANK, N. A., et al.,<br>    Defendants. | Case No. 14-cv-05611-JD<br><br>**ORDER RE SUMMARY JUDGMENT** |

Plaintiff Simonette D. Forto sued defendants Capital One Bank, N.A. ("Capital One"), and United Recovery Systems, L.P. ("URS"), for unlawful and abusive debt collection practices under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the California Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code §§ 1788-1788.32. Dkt. No. 1. Defendants have moved for summary judgment on all claims. Dkt. No. 45. The motion is granted and the case is dismissed.

## BACKGROUND

The material facts are undisputed and straightforward. In April 2012, Forto opened a credit card account with defendant Capital One. Dkt. No. 46 (Forto Deposition - part 1)[1] at 29:3-13. She stopped making payments on the account and it became delinquent. *Id.* at 29:22-30:15. By October 2013, Forto was $2,940.83 in arrears, and Capital One engaged defendant URS to collect the debt. Dkt. No. 47 (DeYoung Decl.) ¶ 4 and Exh. 1. On December 26, 2013, Forto called URS to resolve the debt and spoke to a URS representative in a recorded phone call. Dkt. No. 47-1. Forto said that she was on disability leave and asked for a monthly payment plan she

---

[1] Defendants filed their exhibits in a convoluted format. The Court has done its best to bring clarity to the record by citing to ECF docket numbers and internal document descriptors.

could afford. *Id.* at 3:8-5:5. After discussing possible amounts, the representative offered to settle the debt for $1,911.54 to be paid over 36 months in the amount of $53.10 per month. *Id.* at 12:23-13:5. Forto agreed to this proposal. *Id.* at 13:6.

The representative advised Forto that URS would set up an automatic system to pay the monthly installments out of her checking account. *Id.* at 16:2-19. The representative asked for Forto's checking account and bank routing numbers. *Id.* at 14:5-6. Forto provided an account number and the representative located the routing number for Forto's Patelco Credit Union branch. *Id.* at 14:7-15:6, 19:6-24. The representative said URS would send a confirmation email for the settlement and "a reminder letter or a confirmation letter every month five to ten days before the payment is set to come out." *Id.* at 21:7-14. The checks were to be sent on the 27th of each month from December 2013 through November 2016. *Id.* at 20:6-20.

These agreements and procedures fell apart immediately. URS could not get even one of the monthly payments out of Forto's checking account. Dkt. No. 46-2 (Forto Deposition - part 3) at 120:3-7; Dkt. No. 47 (DeYoung Decl.) ¶ 8 and Exh. 1 at 3-4. The Patelco Credit Union rejected URS's payment requests with error codes such as "no account." Dkt. No. 47 (DeYoung Decl.) ¶ 8 and Exh. 1 at 5. The same representative who negotiated the settlement with Forto called her again on January 3, 2014, to address the problem, but Forto cut the conversation short and said "I'm not talking to you, don't call me." Dkt. No. 47-2 at 2:2-20. URS tried to reach Forto over 20 more times between January 3, 2014 and March 13, 2014, with no success or any cooperation by her. Dkt. No. 47 (DeYoung Decl.) ¶ 10 and Exh. 1 at 3-4. URS shared this information with Capital One. *See* Dkt. No. 50 at 12.

In April 2014, a law firm representing Capital One sent a letter to Forto stating that she needed to resolve the debt or risk litigation. Dkt. No. 47-4 (D'Anna Decl.) ¶ 2 and Exh. 1. Forto says she never saw the letter. Dkt. No. 46-2 (Forto Deposition - part 3) at 104:16-25. In any event, Capital One sued Forto in June 2014 in California state court to collect the delinquent $2,940.83 she owed. Dkt. No. 47-4 (D'Anna Decl.) ¶ 3 and Exh. 2. For reasons not shared with the Court, the case appears to have been dismissed. Dkt. No. 49-1 (Forto Decl.) ¶ 15.

2

Despite admitting that she never paid a dime on her debt, Dkt. No. 46-2 (Forto Deposition - part 3) at 120:3-7, Forto sued defendants in December 2014 for purportedly failing to abide by the terms of the repayment agreement. Dkt. No. 1. The gist of her legal theory is that she satisfied her obligations on the debt simply by providing defendants with access to her account, and the defendants' subsequent collection efforts and claim that the debt is outstanding amount to illegal practices under the FDCPA and RFDCPA. *See, e.g., id.* ¶¶ 34-44.

## DISCUSSION

Congress passed the FDCPA to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). To those ends, it generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt" or engaging in any conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. §§ 1692d, f. While the list of prohibited actions is not exhaustive, the statute prohibits debt collectors from trying to collect any amount that is not "expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). The RFDCPA incorporates by reference the FDCPA's requirements and "makes available the FDCPA's remedies for violations." *Diaz v. Kubler Corp.*, 785 F.3d 1326, 1328 (9th Cir. 2015) (internal quotation omitted).

None of these important statutory concerns applies here because defendants did nothing that even comes close to an unscrupulous debt collection practice. As the record establishes, "[t]here is no dispute of material fact that Plaintiff has not paid a single cent toward the settlement of her Debt, which constituted a material breach in and of itself of the Settlement Agreement." Dkt. No. 45 at 7. Defendants' conduct was reasonable, fair and consistent with legal collection practices.

Forto does not meaningfully dispute the facts leading to this conclusion. Her main response is that she upheld her side of the bargain just by providing a checking account number. Dkt. No. 49 at 11; Dkt. No. 49-1 (Forto Decl.) ¶ 11. That argument does not hold water. Under California law, which the parties agree governs here, "[t]he basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting." *Founding Members of the*

3

*Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 955 (2003). That intent is found in the first instance in the words of the agreement as understood in their ordinary meaning and in a manner that avoids absurd results. *Id.* at 956; *see also Reudy v. Clear Channel Outdoors, Inc*., 693 F. Supp. 2d 1091, 1114 (N.D. Cal. 2010). The parties' agreement as recorded during the phone call is clear as day: URS agreed to compromise the outstanding debt to a reduced figure in exchange for Forto's promise to pay a minimum amount each month until the reduced amount was paid off. Dkt. No. 47-1. The repayment agreement was reached because Forto herself called URS to negotiate her delinquent Capital One account, and the parties without question understood that they had reached a compromise where Forto would pay $53.10 per month over 36 months in exchange for a total payment that was significantly lower than what she owed. *Id.* at 3:12-18, 12:24-13:10. For Forto to say now that her side of the deal was merely to give URS an account number and then wish it well flies in the face of the express terms she agreed to.

Forto's suggestion that she is off the hook because URS had an independent duty to obtain the correct number for her account is equally unavailing. The URS representative asked Forto to provide her account number and explained that the repayment system required this information. *Id.* at 14:5-15:17. Forto gave a number. *Id.* at 19:13-24. When her bank rejected the payment requests, URS reached out to her immediately and repeatedly to fix the problem. Dkt. No. 47 (DeYoung Decl.) ¶¶ 8-10 and Exh. 1 at 3-4. Forto does not deny that she failed to give URS a usable account number or that she ignored URS's follow-up calls. If there was an impediment to realizing the terms of the agreement, it was Forto's own conduct, namely the failure to provide a usable account number, and she cannot bootstrap her own defaults to excuse performance under the agreement. *See Schellinger Brothers v. Cotter*, 2 Cal. App. 5th 984, 1006 (2016).

Forto's passing argument that the parties never discussed the "consequences if the payments were not made" is of no moment. Dkt. No. 49 at 7. At the very beginning, the URS representative expressly told Forto that her "account is up for possible legal action. That just basically means if there was no arrangements made on the account that they could pursue for the

balance in full." Dkt. No. 47-1 at 7:13-17.  Forto had ample notice from the start that collection measures for the full amount were possible in the absence of a payment plan.

Forto's effort to find refuge in purported fact disputes over the parties' agreement is also misdirected.  She fails to show any genuine dispute of material fact here, and her subjective (and self-serving) interpretations of the agreement do not amount to a relevant consideration.  *Newport Beach Country Club*, 109 Cal. App. 4th at 956; *see also Edwards v. Symbolic Int'l. Inc.*, 414 Fed. Appx. 930, 932 (9th Cir. 2011) ("[T]he mere state of mind of the parties--with reference to the 'meeting of the minds'--is not the essential object of inquiry, the terms of the promise act being determinable by an external and not by an internal standard.") (internal quotation omitted).

If anything is striking here, it is that Forto's complaint improperly inverts the law.  Her default excused defendants from any obligations to her under the repayment agreement, and not the other way around.  Defendants were perfectly entitled to terminate the agreement with Forto after she failed to live up to the payment plan.  *Brown v. Grimes*, 192 Cal. App. 4th 265, 277 (2011).  And given Forto's "total failure in the performance of the contract," a reasonable jury could not find that her breach was immaterial.  *See Rano v. Sipa Press, Inc.*, 987 F.2d 580, 586 (9th Cir. 1993) (internal quotation omitted); *Brown*, 192 Cal. App. 4th at 277-78.

## CONCLUSION

Summary judgment is granted for defendants on all claims.  The case is closed.

**IT IS SO ORDERED.**

Dated:  March 20, 2017

JAMES DONATO
United States District Judge

5