UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SIMONETTE D FORTO,

Plaintiff,

v.

CAPITAL ONE BANK, NATIONAL
ASSOCIATION, et al.,

Defendants.

Case No.  14-cv-05611-JD (MEJ)

**ORDER RE: MOTION FOR
ATTORNEYS' FEES**

Re: Dkt. No. 56

**INTRODUCTION**

Defendant United Recovery Systems, LP, now known as Alltran Financial ("URS"), filed a

Motion for Attorneys' Fees to recover the fees and costs it incurred in litigating this matter.  Mot.,

Dkt. No. 56.  Plaintiff Simonette Forto filed an Opposition (Dkt. No. 61), and URS filed a Reply

(Dkt. No. 63).  The Presiding Judge in this matter, the Honorable James Donato, referred the

Motion to the undersigned.  Dkt. No. 62.  Having considered the parties' arguments, the relevant

legal authority, and the record in this case, the Court issues the following order.

**BACKGROUND**

Judge Donato's Order re: Summary Judgment sets out a detailed factual background of this

matter.  Order re: Mot. for Summ. J. ("MSJ Order") at 1-3, Dkt. No. 54.  As is relevant here,

Plaintiff opened a credit card account with Defendant Capital One Bank (U.S.A.), N.A.  She

stopped making payments on the account, and it became delinquent.  Capital One engaged URS to

collect the debt.

In October 2013, Plaintiff owed $2,940.83 on the debt; she negotiated an agreement with

URS by which she would pay $1,911.54 in monthly installments over a period of 36 months.

Plaintiff provided URS with her checking account and bank routing numbers so URS could

automatically withdraw the monthly installments from her checking account.  A URS

representative informed Plaintiff that URS would send a reminder or confirmation letter five to ten

days prior to withdrawing the funds.

URS was unsuccessful in withdrawing any of the agreed-upon monthly payments:

Plaintiff's credit union rejected URS' payment requests with error codes such as "no account."  On

January 3, 2014, the URS representative who negotiated the agreement called Plaintiff to address

the problem; Plaintiff cut the conversation short and said "I'm not talking to you, don't call me."

URS unsuccessfully attempted to reach Plaintiff over 20 times between January 3, 2014 and

March 13, 2014.  URS shared this information with Capital One.

In June 2014, Capital One sued Plaintiff in California state court to recover the debt; this

case was subsequently dismissed.  On December 23, 2014, Plaintiff sued Defendants in this Court,

asserting two claims under (1) the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §

1692 et seq., against URS; and (2) the Rosenthal Fair Debt Collection Practices Act ("Rosenthal

Act"), Cal. Civ. Code §§ 1788-1788.32, against both Defendants.  Compl. ¶¶ 39-44, Dkt. No. 1.

Plaintiff alleged she fulfilled her obligations on the debt by providing Defendants with access to

her checking account, yet Defendants' subsequent efforts to collect the funds violated the FDCPA

and the Rosenthal Act.  Plaintiff did not repay any portion of her debt.

On March 20, 2017, Judge Donato granted summary judgment in favor of Defendants on

both claims, finding "defendants did nothing that even comes close to an unscrupulous debt

collection practice."  MSJ Order at 3.  On the contrary, Judge Donato found "Defendants' conduct

was reasonable, fair and consistent with legal collection practices."  *Id.*  Judge Donato rejected

Plaintiff's argument that she upheld her side of the agreement simply by providing URS with a

checking account number.  *Id.* at 4 ("For Forto to say now that her side of the deal was merely to

give URS an account number and then wish it well flies in the face of the express terms she agreed

to.").  Judge Donato further found Plaintiff "fail[ed] to show any genuine dispute of material fact

[regarding the parties' agreement], and her subjective (and self-serving) interpretations of the

agreement d[id] not amount to a relevant consideration."  *Id.* at 5.  He emphasized that

[i]f anything is striking here, it is that Forto's complaint improperly

inverts the law.   Her default excused defendants from any obligations to her under the repayment agreement, and not the other way around.   Defendants were perfectly entitled to terminate the agreement with Forto after she failed to live up to the payment plan. *Brown v. Grimes*, 192 Cal. App. 4th 265, 277 (2011).   And given Forto's "total failure in the performance of the contract," a reasonable jury could not find that her breach was immaterial.   *See Rano v. Sipa Press, Inc.*, 987 F.2d 580, 586 (9th Cir. 1993) (internal quotation omitted); *Brown*, 192 Cal. App. 4th at 277-78.

*Id.* Judgment was entered in favor of Defendants on March 21, 2017.  Judgment, Dkt. No. 55.

Defendants subsequently filed this Motion, seeking a total of $80,168.20 in attorneys' fees and

costs: $61,418.20 for URS and $18,750 for Capital One.  *See* Mot.  Capital One has since

withdrawn its request for $18,750; URS' request remains pending.  Dkt. No. 60.  On May 5, 2017,

the Clerk of Court taxed costs in the amount of $1,185.67 against Plaintiff.  Dkt. No. 65.

## OBJECTIONS

Before turning to the parties' substantive arguments, the undersigned addresses Plaintiff's

objections to all of URS' declarations and to URS' Reply.  *See* Opp'n at 1; Obj., Dkt. No. 64.

### A.   URS' Declarations

Plaintiff argues "[t]hroughout its declarations, URS relies upon hearsay that is inadmissible

pursuant to Fed. R. Evid. 803, 804, and 807" as they "are nearly all self-serving renditions of what

URS says others told them, often through email."  *Id.*  Plaintiff requests the Court "strike all URS

declarations in their entirety . . . and give them no weight whatsoever."  *Id.*

The undersigned OVERRULES Plaintiff's objections.  Plaintiff's sparse argument does not

identify any specific portions of the declarations she believes constitute hearsay.  The Declaration

of Gregory B. Thomas, counsel for Defendants, concerns only Mr. Thomas' work performed on

this litigation, the number of hours billed, and his hourly billing rate; he does not recount any out-

of-court statements or emails.  *See* Thomas Decl., Dkt. No. 56-4.  Only the Declarations of

Brandon A. Carnes and Janet DeYoung refer to out-of-court conversations, and only Mr. Carnes

addresses emails.  *See* Carnes Decl. ¶¶ 5-8 & Exs. A-C, Dkt. No. 56-2; DeYoung Decl. ¶¶ 5-6,

Dkt. No. 58.  The Carnes Declaration does not exclusively concern those conversations; rather, he

also describes his role in litigating this action, his hourly billing rate, and the number of hours he

worked on this litigation.  *See* Carnes Decl.  Ms. DeYoung offers URS' account notes regarding

1  Plaintiff's account, notes which are "kept in the regular and ordinary course of URS's business."

2  DeYoung Decl. ¶¶ 3-5 & Ex. 1; *see* Fed. R. Evid. 803(6).

3       Accordingly, the Court finds Plaintiff's broad characterization of URS' declarations as

4  "nearly all self-serving renditions of what URS says others told them" without merit.  Not every

5  portion of the declarations is hearsay, and the Court declines to strike them in their entirety.[1]

6  **B.  URS' Reply**

7       Plaintiff also objects to and seeks to strike URS' Reply in its entirety on the erroneous

8  ground that it raises new argument not raised in its Motion.  *See* Obj.  The Court OVERRULES

9  Plaintiff's objections to the Reply, as the Reply responds to arguments Plaintiff raised in her

10  Opposition.  This is acceptable.  *See Shamburger v. Dodson*, 2011 WL 829266, at *5 (N.D. Cal.

11  Mar. 3, 2011).

12  **MOTION TO STAY**

13       Plaintiff includes with her Objection to URS' Reply a "Motion to Stay URS's Motion for

14  Attorneys' Fees."  *See* Obj. at 6.  Plaintiff contends there are two cases pending before the Ninth

15  Circuit which address whether the FDCPA supersedes the Rosenthal Act's remedies, *Afewerki v.*

16  *Anaya Law Group*, Case No. 15-56510, and *Romero v. Department Stores National Bank*, Case

17  No. 16-56265.  *Id.* at 6.  Plaintiff contends that "[i]n both cases the issue before the Ninth Circuit

18  is whether the remedies in the California's Rosenthal Act incorporates the remedies found in the

19  FDCPA, as the California's Rosenthal Act states, and URS now denies."  *Id.*

20       First, Plaintiff's request to stay is procedurally improper; Plaintiff did not file it as a

21  separate motion and instead included it with her objections to URS' Reply.  As such, URS has not

22  had an opportunity to be heard on the request to stay.  Second, *Afewerki* and *Romero* are

23  inapposite.  The Ninth Circuit issued its opinion in *Afewerki* on August 18, 2017.  *See Afewerki v.*

24  *Anaya Law Grp.*, ___ F.3d ___, 2017 WL 3567829 (9th Cir. Aug. 18, 2017).  The *Afewerki* court

25  addressed "the materiality of modest overstatements of an amount due and an interest rate" under

26

27  ---

28  [1] The Court does not address the Declaration of Connie Y. Tcheng (Dkt. No. 56-3) as her Declaration supports Capital One's now-withdrawn motion for attorneys' fees.

United States District Court
Northern District of California

the FDCPA and the Rosenthal Act.[2]  *Id.* at *2.  The issues presented on appeal in *Romero* involve the Telephone Consumer Protection Act, which is not at issue in this case; whether "a debt collector that called a consumer hundreds of times against her will escape all liability for violating California's Rosenthal Fair Debt Collection Practices Act simply by refraining from making further calls once it has been sued"; and whether "receiving hundreds of unwanted robocalls could not possibly be highly offensive to a reasonable person—and therefore is not a violation of the common law right to be free from intrusions upon seclusion" is a question for the judge or jury. Pet. Br. at 1-2, *Romero* Dkt. No. 18-1.  Neither case addresses attorneys' fees under the FDCPA or the Rosenthal Act.  Staying the Motion to await a decision in *Romero* is therefore unwarranted. Accordingly, the undersigned DENIES the Motion to Stay.

### MOTION FOR ATTORNEYS' FEES

URS seeks $45,625 for work performed by Mr. Carnes, counsel for Defendants and URS' national counsel, for 182.50 hours billed by him and his law firm at an hourly rate of $250 per hour.  Mot. at 13.  URS also seeks $15,168.20 for work performed by Mr. Thomas, counsel for both Defendants, for 75.8 hours billed by him and his firm at an hourly rate of $200 per hour.  *Id.* URS seeks these fees pursuant to the FDCPA, the Rosenthal Act, and 28 U.S.C. § 1927.  *See* Mot.

**A.     FDCPA**

1.     Legal Standard

As is relevant here, the FDCPA provides that "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs."  15 U.S.C. § 1692k(a)(3); *see Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 940 (9th Cir. 2007) ("When defending against a claim under the Act, a debt collector may recover attorneys' fees and costs upon a district court's finding that the consumer brought the action in bad faith and for purposes of harassment.").  "[T]he context of § 1692k(a)(3) indicates that Congress was simply confirming the background rule that courts may award to defendants attorney's fees and costs when the plaintiff

---

[2] Given that Plaintiff's counsel also represented the *Afewerki* plaintiff, counsel should have known that *Afewerki* does not concern attorneys' fees under the FDCPA or the Rosenthal Act.

United States District Court
Northern District of California

brings an action in bad faith.  The statute speaks to one type of case—the case of the bad-faith and harassing plaintiff." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 387 (2013).

      2.   <u>Analysis</u>

In order to award URS attorneys' fees, the undersigned must find Plaintiff brought this action in bad faith and for purposes of harassment.  *See Marx*, 568 U.S. at 382 ("The second sentence of § 1692k(a)(3) . . . provides that plaintiffs who bring an action in bad faith and for the purpose of harassment may be liable for the defendant's fees and costs.").  URS argues "[t]he facts of the case, lack of legal support for Plaintiff's claims, and settlement history demonstrate that [Defendants] should be awarded their reasonable attorneys' fees and costs against both Plaintiff and her attorneys." Mot. at 7.  Plaintiff argues URS is not entitled to attorneys' fees because she alleged "numerous justified violations of the FDCPA and California's Rosenthal Act[.]"  Opp'n at 2.[3]  Plaintiff contends these theories of liability show that she "brought her action believing she was alleging at least ten good faith violations of federal and state law—five FDCPA violations and five Rosenthal Act violations."[4]  Opp'n at 9; *see id.* at 12 ("Plaintiff need only allege one violation, and here Plaintiff had ten theories on which to rely for her case.").  The undersigned finds URS has established bad faith and harassment entitling it to fees.

---

[3] Plaintiff states why URS violated various provisions of the FDCPA, including 15 U.S.C. §§ 1692e(2) and (10), 1692f(1)-(2), and 1692c(a)(1).  Opp'n at 2-6.  Judge Donato has already found URS did not and entered judgment accordingly.  MSJ Order; Judgment.  To the extent Plaintiff seeks to re-litigate the merits of this action, such argument is not properly before the undersigned.  The only issue before the undersigned is attorneys' fees.

[4] It is unclear how Plaintiff concludes she alleged five FDCPA violations and five Rosenthal Act violations.  Plaintiff's Complaint alleges URS violated 15 U.S.C. §§ 1692f, 1692f(1), and 1692d.  Compl. ¶¶ 34, 36, 37.  While the Complaint cites other portions of the FDCPA, those provisions define various terms or concern attorneys' fees.  *See, e.g., id.* ¶¶ 17-18, 23, 29.  The Complaint makes no mention of 15 U.S.C. §§ 1692e or 1692c.  *See generally* Compl.  Similarly, the Complaint alleges only that Defendants' "acts and omissions constitute numerous and multiple violations of the Rosenthal Act, including but not limited to . . . Cal. Civ. Code §§ 1788-1788.32[.]"  *Id.* ¶ 43.  The face of the Complaint therefore undermines Plaintiff's contention that she asserted "at least *ten* good faith violations" of the FDCPA and the Rosenthal Act.  Rather, it appears Plaintiff has raised several of these alleged violations for the first time in her Opposition; she did not raise them in her Complaint or address them in her Opposition to Defendants' Motion for Summary Judgment.  *See* Compl.; MSJ Opp'n, Dkt. No. 49.

1  Courts have declined to find bad faith where the plaintiff's claims are "minimally

2  colorable." *Guerrero*, 499 F.3d at 940.  The undersigned cannot make such a finding here.  Judge

3  Donato found that "[i]f there was an impediment to realizing the terms of the agreement, it was

4  Forto's own conduct, namely the failure to provide a usable account number, and she cannot

5  bootstrap her own defaults to excuse performance under the agreement."  MSJ Order at 4.  Judge

6  Donato accordingly found "that Forto's complaint improperly inverts the law. [] Defendants were

7  perfectly entitled to terminate the agreement with Forto after she failed to live up to the payment

8  plan." *Id.* at 5 (citing *Brown*, 192 Cal. App. 4th at 277).

9  Plaintiff argues that she "need only allege one violation, and here Plaintiff had ten theories

10  on which to rely for her case." Opp'n at 12.  That Plaintiff took a kitchen sink approach and

11  asserted "ten" claims does not, in and of itself, show she brought her claims in good faith where,

12  as here, she did not have a factual basis for them.  Plaintiff's approach cannot be excused by the

13  fact she was representing herself in this action; counsel filed the Complaint and the Opposition to

14  the Motion for Summary Judgment.  In addition, Plaintiff offers no reason why she did not know

15  at the outset of this litigation that she did not make a single payment on the debt and that she

16  actively evaded URS' attempts to correct the erroneous bank account number so as to prevent

17  URS to recover the debt pursuant to the parties' agreement.  These facts rendered her claims

18  meritless and demonstrate her lawsuit was brought in bad faith.  The undersigned therefore cannot

19  find Plaintiff's claims were "minimally colorable." *See Bonner v. Redwood Mortg. Corp.*, 2010

20  WL 2528962, at *5 (N.D. Cal. June 18, 2010) ("easily" finding bad faith where court previously

21  "emphasized that . . . plaintiff alleged no facts to support his [FDCPA and Rosenthal Act]

22  claims"); *cf. Zizlsperger v. Maxwell & Morgan PC*, 565 F. App'x 633, 637 (9th Cir. 2014)

23  (plaintiffs who "paid to date at least $2,192.74 on an initial debt of $313.73, and ha[d] been

24  ordered to pay at least an additional $7,934.16. . . . were entitled to aggressively defend against the

25  collection attempts.  Although the arguments [were] unavailing, they [were] not frivolous and

26  were not brought in bad faith or to harass.").

27  But there is nothing in the record that suggests Plaintiff brought this lawsuit to harass URS.

28  URS contends "Plaintiff and/or her attorneys harassed URS by pursuing a lawsuit which they

1   knew or should have known to be frivolous (having inverted the law and received documents

2   wholly refuting their claims); making outrageous settlement demands with no reasonable basis in

3   reality; conducting no reasonable investigation and being willfully ignorant to the facts, and so

4   on." Reply at 8-9. URS' contention that Plaintiff brought her claims, even if frivolous, for

5   purposes of harassment is conclusory. *See Bonner*, 2010 WL 2528962, at *5 ("Although bad faith

6   is easily found [where plaintiff did not have a factual basis for his claims], however, purpose of

7   harassment is not evident."). Conclusory assertions of harassment do not support an award of

8   attorneys' fees under the FDCPA. *See Guerrero*, 499 F.3d at 940-41.

9       URS argues "Plaintiff was hoping to leverage a swift settlement in this matter and

10  persisted simply in the hopes that the costs of defending the suit would leverage into such a

11  settlement." Mot. at 10; *see* Reply at 9-10. URS bases this conclusion on the fact that the parties

12  were unable to reach a settlement. *See* Mot. at 10 ("Plaintiff's attorneys sought amounts

13  approaching $200,000.00 for the resolution of this case at the outset, even before URS had filed an

14  answer. [ ] It was not until the day of Plaintiff's deposition, March 4, 2016 . . . that Plaintiff's

15  counsel offered to settle the suit for $15,000.00."). Without more, the fact that the parties could

16  not settle this matter does not demonstrate that Plaintiff intended to harass URS. *Cf. Scroggin v.*

17  *Credit Bureau of Jonesboro, Inc.*, 973 F. Supp. 2d 961, 968-69 (E.D. Ark. 2013), *aff'd*, 576 F.

18  App'x 632 (8th Cir. 2014) (finding plaintiff brought FDCPA claims to harass defendant where

19  plaintiff publicly "stated that he wanted to maximize the retaliation to [defendant], do some

20  damage, and hopefully goad or force [defendant] to an actual trial"; "stated he forced [defendant]

21  to abide by his schedule and discussed his intention to turn the deposition into a circus"; "stat[ed]

22  that he was willing to sacrifice his actual damages in order to turn his deposition into a circus,

23  [and] acknowledged that his claim for actual damages was not sincere"; and "boasted that the

24  FDCPA essentially allowed him to continue this action for his entertainment and to harass

25  [defendant] and its counsel").

26      URS offers evidence that Plaintiff's counsel did not communicate URS' settlement offer to

27  Plaintiff. *See* Carnes Decl., Ex. D (Pl.'s Dep.) at 99:5-9 ("Q: Are you aware that the defendants

28  in this case have made an offer to settle your case? A: I was told there was no offer. Q: At any

United States District Court
Northern District of California

8

point?  A:  Yeah."), *id.* at 99:22-25 ("Q:  As you sit here today, you're not aware that either URS or Capital One has offered to pay you any money to resolve this lawsuit?  A:  I'm not aware."). Assuming, arguendo, counsel did not in fact inform Plaintiff of URS' settlement offer, this is not evidence of Plaintiff's bad faith or intent to haras.[5]  The undersigned sees no reason to hold Plaintiff accountable for her counsel's alleged conduct.  *See also Hyde v. Midland Credit Mgmt., Inc.*, 567 F.3d 1137, 1140-41 (9th Cir. 2009) (because "Congress in the FDCPA failed to indicate any intention to authorize the award of attorney's fees and costs against attorneys representing debtors", "§ 1692k(a)(3) does not authorize the award of attorney's fees and costs against a plaintiff's attorneys").

In short, while the undersigned finds Plaintiff brought this action in bad faith, there is no evidence that Plaintiff sought to harass URS.  Accordingly, URS is not entitled to attorneys' fees under the FDCPA.

**B.     Rosenthal Act**

        1.     Legal Standard

The Rosenthal Act provides that "the prevailing party shall be entitled to costs of the action. . . . [R]easonable attorney's fees may be awarded to a prevailing creditor upon a finding by the court that the debtor's prosecution or defense of the action was not in good faith."  Cal. Civ. Code § 1788.30(c).  An award of attorneys' fees under the Rosenthal Act is "unquestionably" discretionary.  *Gouskos v. Aptos Vill. Garage, Inc.*, 94 Cal. App. 4th 754, 764 (2001).

        2.     Analysis

Unlike the FDCPA, the Rosenthal Act does not require a finding of intent to harass in order to award attorneys' fees to a prevailing creditor.  *Compare* Cal. Civ. Code § 1788.30(c) *with* 15 U.S.C. § 1693(k).  Rather, a creditor need only show that the plaintiff did not bring her action in good faith.  *See* Cal. Civ. Code § 1788.30(c).

---

[5] Plaintiff later testified that "later, when my lawyer reminded me that there was a mediation . . . then that refreshed my memory that there was an offer communicated to me."  Pl.'s Dep. at 133:6-10; *see* Forto Decl. ¶ 48 ("I do recall that Defendants made a few offers to settle the state and federal case. . . ."), Dkt. No. 61-9.

United States District Court
Northern District of California

1    As discussed above, the undersigned finds Plaintiff brought this action in bad faith.  This

2    suffices to justify an award of attorneys' fees to URS under the Rosenthal Act.

3    **C.    28 U.S.C. § 1927**

4        1.    <u>Legal Standard</u>

5        "Any attorney . . . who so multiplies the proceedings in any case unreasonably and

6    vexatiously may be required by the court to satisfy personally the excess costs, expenses, and

7    attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  "This statute

8    requires proving that the opposing party acted with subjective bad faith."  *Kohler v. Flava Enters.*,

9    *Inc.*, 779 F.3d 1016, 1020 (9th Cir. 2015) (internal quotation marks omitted).  "'Bad faith is

10   present when an attorney knowingly or recklessly raises a frivolous argument . . . or argues a

11   meritorious claim for the purpose of harassing an opponent[.]'"  *Id.* (quoting *Estate of Blas v.*

12   *Winkler*, 792 F.2d 858, 860 (9th Cir. 1986)) (ellipses in *Kohler*).  "'[B]ad faith is present when an

13   attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the

14   purpose of harassing an opponent.'"  *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004,

15   1007 (9th Cir. 2015), *cert. denied sub nom. Flynn v. Yellowstone Mountain Club, LLC*, 136 S. Ct.

16   1455 (2016) (quoting *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989).

17       While "an attorney subject to discipline is entitled to procedural due process, including

18   notice and an opportunity to be heard[,]" this "does not require an oral or evidentiary hearing on

19   the issue."  *Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir.

20   2000).  "The opportunity to brief the issue fully satisfies due process requirements."  *Id.*

21       2.    <u>Analysis</u>

22       While nothing in the record indicates Plaintiff intended to harass URS, the same cannot be

23   said about her counsel.  There is evidence that Plaintiff's counsel has unreasonably and

24   vexatiously multiplied the proceedings:

25           (1) The fact that Plaintiff did not make any payments on the debt is a fact counsel

26               knew or should have known at the outset of this litigation.  As such, counsel

27               knew or should have known Plaintiff breached the settlement agreement and

28               therefore "Defendants were perfectly entitled to terminate the agreement . . .

United States District Court
Northern District of California

10

United States District Court
Northern District of California

1  after she failed to live up to the payment plan." MSJ Order at 5. That counsel

2  nevertheless initiated this action shows counsel acted in bad faith.

3  (2) Plaintiff's counsel refused to amend the Complaint despite being presented with

4  evidence that (a) Plaintiff's bank rejected URS' attempts to withdraw payment

5  due to an incorrect bank account number, (b) Plaintiff actively evaded URS'

6  attempts to correct her account number, and (c) Plaintiff did not make any

7  payments on the debt. *See* Carnes Decl., Ex. B (March 2015 emails from URS'

8  counsel to Plaintiff's counsel with attached recordings of URS' attempts to

9  contact Plaintiff by telephone and record of URS' rejected attempts to withdraw

10  payments).[6] At that point, counsel knew or should have known Plaintiff's

11  claims were frivolous.

12  (3) Plaintiff's counsel did not request or take any depositions in this matter. Carnes

13  Decl. ¶ 10.

14  (4) Despite knowledge of the aforementioned defects in this action, counsel

15  proceeded to litigate Plaintiff's claims on the merits. In opposing the Motion

16  for Summary Judgment, Plaintiff's counsel "d[id] not meaningfully dispute the

17  facts leading to th[e] conclusion" that "Defendants' conduct was reasonable,

18  fair and consistent with legal collection practices." MSJ Order at 3. Instead,

19  counsel raised several frivolous arguments which sought to excuse Plaintiff's

20  nonperformance. *See id.* at 3 ("Her main response is that she upheld her side of

21

22  _____

23  [6] Jessica R.K. Dorman, one of Plaintiff's attorneys, declares she and counsel Sara Khosroabadi "could not open or access the recording", "reached out to Defendants' counsel to advise him that

24  [they] needed the recording in another format", and "[i]t was some time before Defendants' counsel provided [them] with the recording, despite [their] several requests." Dorman Decl. ¶¶

25  10-12, Dkt. No. 61-10. The emails themselves contradict Ms. Dorman's representations: they show that Mr. Carnes initially emailed the recordings to Ms. Khosroabadi on March 30, 2015 at

26  2:06 p.m.; Ms. Khosroabadi asked Mr. Carnes to re-send the files at 4:19 p.m. that same day; and Mr. Carnes did so at 4:22 p.m. Carnes Decl., Ex. B. There is no evidence that Plaintiff's counsel

27  could not access the recordings attached to Mr. Carnes' 4:22 p.m. email. Plaintiff's counsel cannot plausibly argue that the three minute delay in receiving the recordings excuses their failure

28  to amend the Complaint.

the bargain just by providing a checking account number.  Dkt. No. 49 at 11;
Dkt. No. 49-1 (Forto Decl.) ¶ 11.  That argument does not hold water."); *id.* at 4
("Forto's suggestion that she is off the hook because URS had an independent
duty to obtain the correct number for her account is equally unavailing."); *id.*
("Forto's passing argument that the parties never discussed the 'consequences if
the payments were not made' is of no moment.  Dkt. No. 49 at 7."); *id.* at 5
("Forto's effort to find refuge in purported fact disputes over the parties'
agreement is also misdirected.  She fails to show any genuine dispute of
material fact here, and her subjective (and self-serving) interpretations of the
agreement do not amount to a relevant consideration.").

(5) Plaintiff's counsel improperly attempted to relitigate claims on which Judge
Donato granted summary judgment and attempted to litigate claims which
counsel never presented in the Complaint.  *See* Opp'n at 2-6.

(6) Plaintiff's counsel filed numerous meritless objections to URS' Reply and
evidence.

(7) Plaintiff's counsel improperly moved to stay the Motion by including that
request in her Reply, depriving URS of the timely opportunity to respond to a
properly-noticed motion.  *See* Obj.

In sum, the record shows that for nearly three years, Plaintiff's counsel's conduct has
forced URS to waste time and resources defending an action that, from the beginning, lacked a
factual basis.  That Plaintiff's counsel nevertheless continued to prosecute Plaintiff's claims,
despite being presented with evidence that her claims were meritless, shows that counsel
unreasonably and vexatiously multiplied these proceedings and did so in bad faith.  Taken as a
whole, the undersigned finds Plaintiff's counsel's conduct in this case amounts to harassment.
Accordingly, URS is entitled to attorneys' fees from Plaintiff's counsel under § 1927.

## CONCLUSION

For the foregoing reasons, the undersigned finds URS is entitled to attorneys' fees pursuant
to the Rosenthal Act and 28 U.S.C. § 1927.  However, URS provides only the sum total of hours

its counsel, Brandon Carnes and Gregory Thomas, worked on this litigation; it has not submitted any documentation detailing the hours that counsel spent working on this matter.  Without such information, the undersigned cannot determine whether the requested fees are reasonable.  *See* Cal. Civ. Code § 1788.30(c) (providing for an award of "*reasonable* attorney's fees" (emphasis added)).  URS offers to submit time keeping records for in camera review.  *See* Carnes Decl. ¶ 21 (offering to produce time records for in camera review); Thomas Decl. ¶ 9 (same).  URS offers no reason why its records should not be made available to Plaintiff, and the undersigned finds no basis for an in camera review.  As such, no later than October 4, 2017, URS shall file in the public docket time keeping records that show the number of hours counsel worked on this litigation with sufficient descriptions to allow the undersigned to evaluate the reasonableness of the hours.  Plaintiff may respond no later than October 11, 2017.  To the extent URS believes such information is confidential or otherwise requires sealing, URS may file a motion to file under seal in accordance with Civil Local Rule 79-5.

**IT IS SO ORDERED.**

Dated: September 20, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge

United States District Court
Northern District of California