1  Sara F. Khosroabadi, Esq. (SBN: 299642)
   sara@westcoastlitigation.com
2  **Hyde & Swigart**
   2221 Camino Del Rio South, Suite 101
3  San Diego, CA 92108
   Office:    (619) 233-7770
4  Facsilime: (619) 297-1022
5
6  Attorneys for Simonette D. Forto
7
8
9              **UNITED STATES DISTRICT COURT**
10            **NORTHERN DISTRICT OF CALIFORNIA**
11
   Simonette D. Forto                    )    **Case No: 14-cv-05611-JD (MEJ)**
12                                        )
                                          )    **Plaintiff's Response to Defendant URS'**
13                    Plaintiff,          )    **Request for Fees**
   v.                                     )
14                                        )    **Judge: Hon. Maria-Elena James**
15 Capital One Bank, National             )
   Association, et al.,                   )
16                                        )
                                          )
17                    Defendants.         )
                                          )
18                                        )
                                          )
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

**I.  Introduction** ................................................................................................ **1**

A. It is improper, and unreasonable, to award fees because
the debt was owed. ........................................................................................ 1

B. Neither finding by the Magistrate Judge supports an award for
attorneys' fees. ............................................................................................. 4

**II.  Argument** ..................................................................................................... **5**

A. Any fees requested under 28 U.S.C. § 1927 are *per se* unreasonable as URS
has failed to request fees from a specific individual attorney for specific conduct
that unreasonably and vexatiously caused URS to incur specific fees. ............... 5

1. URS's fee request does not identify any specific attorney. .......................... 5

2. URS's fee request also does not identify any "conduct" that "multiplied"
the proceedings and caused URS to unreasonably and vexatiously incur
"excess" costs reasonably incurred because of such conduct. .......................... 8

B. Any fees awarded against Plaintiff pursuant to Cal. Civ. Code § 1788.30 are
*per se* unreasonable. ....................................................................................... 9

C. URS has not met its burden with regard to establishing fees. ....................... 10

1. URS has not met its burden as to a reasonable hourly rate. ........................ 10

2. URS has not met its burden as to reasonable hours. .................................. 12

3. URS improperly seeks fees for work performed for or by Capital One and
these fees should not be awarded. ................................................................ 17

D. Genuine issues of disputed fact existed here, and had the Court not granted
summary judgment Plaintiff would have proven what URS admitted in its
affirmative defense - URS violated the FDCPA and Rosenthal Act. .................. 17

E. The Ninth Circuit has held that when an attorney presents a colorable case,
sanctions are unwarranted.   Consequently, here any fee award would be
unreasonable. .............................................................................................. 18

**III.  Conclusion** ................................................................................................ **23**

# **TABLE OF AUTHORITIES**

## **CASES**

*Afewerki v. Anaya Law Grp.*, 868 F.3d 771 (9th Cir. 2017) ........................................20

Ash Grove Cement Co. v. Liberty Mut. Ins. Co., 649 F. App'x 585(9th Cir. 2016)...................17

*Ass'n of Irritated Residents v. C & R Vanderham Dairy*,

    435 F. Supp. 2d 1078 (E.D. Cal. 2006) .........................................................7

*Baker v. G. C. Servs. Corp.*, 677 F.2d 775 (9th Cir. 1982). ..............................2, 24

*Barjon v. Dalton*, 132 F.3d 496 (9th Cir.1997) ................................................10

*Bazuaye v. INS*, 79 F.3d 118 (9th Cir. 1996).....................................................7

*Birbrower, Montalbano, Condon & Frank v. Superior Court*, 17 Cal. 4th 119 (1998). .............14

*Blum v. Stenson*, 465 U.S. 886 (1984)............................................................11

*Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973 (9th Cir. 2008).......................4,7,10,11

*Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162 (9th Cir. 2006).....................2

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447 (1990) ..........................24

*Costa v. Nat'l Action Fin. Servs.*, 634 F. Supp. 2d 1069 (E.D. Cal. 2007).................................2

*Cunningham v. County of Los Angeles*, 879 F.2d 48(9th Cir.1988) ......................................9

*Donohue v. Quick Collect, Inc.*, 592 F.3d 1027 (9th Cir. 2010) ...................................21

*Fischer v. SJB–P.D., Inc.,* 214 F.3d 1115 (9th Cir.2000). ...........................................15

*Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507 (9th Cir. 1994)...................................22

*Gardner v. Watson,* 170 Cal 570 (1915) ..........................................................20

*Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir.1993)...............................................16

*Giebelhaus v. Spindrift Yachts*, 938 F.2d 962 (9th Cir.1991) .....................................24

*Golba v. Dick's Sporting Goods, Inc.*, 238 Cal. App. 4th 125 (2015)..................................14

*Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055 (9th Cir. Cal. 2011) ...................................10

*Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926 (9th Cir. 2007)...................................23

*Harrington v. Educ. Mgmt. Corp.*,

    No. 02 CIV. 0787 (HB), 2002 WL 1009463, at *2 (S.D.N.Y. May 17, 2002), .....................22

*Heintz v. Jenkins*, 514 U.S. 291 (1995) ............................................................20

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ...............................................1, 16,17

*In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431 (9th Cir. 1996)......................8,9

*In re Yagman*, 803 F.2d 1085 (9th Cir. 1986). ...................................................9

*Kaass Law v. Wells Fargo Bank, N.A.*, 799 F.3d 1290 (9th Cir. 2015) ....................5,6

*King v. GEICO Ins. Co.,*

    No. CV 12-92-BLG-RWA, 2014 WL 1789460, at *3 (D. Mont. May 5, 2014)......................15

*Landry v. Bank of Am., N.A. (In re Landry)*, 493 B.R. 541 (Bankr. E.D. Cal. 2013) .................10

*Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526 (9th Cir. 2011)....................................1

*Matter of Yagman*, 796 F.2d 1165 (9th Cir.) ...............................................6,9

*McCollough v. Johnson, Rodenburg & Lauinger, LLC,*

    637 F.3d 939 (9th Cir. Mont. 2011) ....................................................2, 21

*Mercantile Trust Co. v. Doe*, 26 Cal. App. 246 (Cal. App. 1914)..............................20

*New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298 (9th Cir. 1989)...........................6

*Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099 (9th Cir. 2000) ...............19

*Oberfelder v. Bertoli*, 67 F. App'x 408 (9th Cir. 2003)....................................15

*Oberfelder v. City of Petaluma,*

    No. C-98-1470 MHP, 2002 WL 472308, at *8 (N.D. Cal. Jan. 29, 2002).........................15

*Pavelic & Le Flore v. Marvel Entertainment Group,*

    493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989) .........................................5

*R.E. Tharp v. Miller*, 261 Cal App 2d 81 (1968) ..........................................20

*Ramos v. Lamm,* 713 F.2d 546 (10th Cir.1983) ..........................................15

*Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002 (9th Cir. 2008) ...........................23

*S.E.C. v. Phan*, 500 F.3d 895 (9th Cir. 2007),............................................18

*S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081 (9th Cir. Cal. 1989)............................3, 21

*Smith v. Marsh*, 194 F.3d 1045 (9th Cir. 1999)............................................7

*State of Nev. v. Watkins*, 914 F.2d 1545 (9th Cir. 1990) ....................................7

*Stenson*, 465 U.S. 886, 895 (1984) ......................................................11

*The Board of Governors of Wayne State University v. Bajkowski,*

   1987 WL 12911, at \*1 (N.D.Ill. June 19, 1987)....................................................22

*Trulis v. Barton*, 107 F.3d 685 (9th Cir. 1995).........................................................6

*United States ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117 (C.D. Cal. 2000)..............7

*United States v. Associated Convalescent Enterprises, Inc.*, 766 F.2d 1342 (9th Cir. 1985) ......8,9

*United States v. Blodgett*, 709 F.2d 608 (9th Cir.1983) ...............................................8

*United States v. Romm*, 455 F.3d 990 (9th Cir. 2006).................................................7

*United States v. Shumway*, 199 F.3d 1093 (9th Cir.1999) ..........................................18

*United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403 (9th Cir.1990) .....................11

*Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041 (9th Cir. 2000) ..........................................1

*Volpe v. City of Hawthorne,* 644 F.Supp. 1312 (C.D.Cal.1986) .....................................15

*Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815 (9th Cir. 2009) .................................14

*Zaldivar v. City of Los Angeles, 780 F.2d 823* (9th Cir.1986) .......................................9

## STATUTES

15 U.S.C. § 1692(a)...............................................................................................23

15 U.S.C. § 1692f(1).............................................................................20, 21, 22

28 U.S.C. § 1927.................................................................................................4

Cal. Civ. Code § 1788.17..................................................................................20

Cal. Civ. Code § 1788.30 ...................................................................................4

Cal. Civ. Code § 1788.30(c),.............................................................................24

Cal. Civ. Code §§ 1788 et seq. ...........................................................................2

1

2    **I.  Introduction**

3        On September 20, 2017, the Magistrate Judge ordered URS to provide billing records

4    evidencing fees alleged to have been incurred by URS.  URS has now submitted what it claims

5    are billing records for the entire case here, rather than any excess fees [Dkt.  No. 67]. The

6    Magistrate ordered Plaintiff to respond to those records, and this response is as follows.

7    Plaintiff's response is due by October 11, 2017. Dkt. #66. As Plaintiff explains below, none of

8    these records are reasonable, and Plaintiff requests the Court deny any request for fees.

9        Further, URS has produced nothing in the way of evidence supporting these billing records

10   through any sworn declaration or affidavit by anyone swearing under oath that the billing statements

11   are true and correct, or accurate, or even what these records purport, or whether they purport to

12   claim a person worked on the case, their titles, or were they attorneys, legal assistants, secretaries,

13   etc.  Further, most include nothing in the way of evidence as to whether their hourly rate is

14   acceptable. "The party seeking an award of fees must submit evidence supporting the hours worked

15   and the rates claimed." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir.

16   2000), citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

17   Unattributed hearsay documents with no proof of authenticity or genuineness, or as to whether the

18   documents are authored by any particular person, are inadmissible under the federal rules of

19   evidence. Fed. R. Evid. 901 requires proof of a rational basis for the party's claim that the document

20   is what it is asserted to be.  Here URS provides nothing.

21       The authentication of a document requires " 'evidence sufficient to support a finding that
     the matter in question is what its proponent claims.' " Id. (quoting Fed.R.Evid. 901(a)). A
22   document authenticated through personal knowledge must be attached to an affidavit, and
     the affiant must be a competent " 'witness who wrote [the document], signed it, used it,
23   or saw others do so.' " Id. at 773–74 & n. 8 (quoting Fed.R.Evid. 901(b)(1)).

24

25   *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532–33 (9th Cir. 2011)

26       **A. It is improper, and unreasonable, to award fees because the debt was owed.**

27       The Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA") is a strict

28   liability statute. *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1177 (9th

Cir. 2006); *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. Mont. 2011).  The same is true as to the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788 et seq. ("Rosenthal Act"). *Costa v. Nat'l Action Fin. Servs.*, 634 F. Supp. 2d 1069 (E.D. Cal. 2007), fn 7.  Further, and contrary to what the Court appears to have relied upon in making its findings, whether the debt is owed or not *is not relevant* to in an FDCPA or Rosenthal Act action.

> The [FDCPA] is designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists." *Baker v. G. C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982). … The statute does not make an exception for liability … when the debtor does in fact owe the entire debt. *Id.*

However, the Magistrate and the District Judge focus their comments concerning bad faith on the idea that Plaintiff never paid her debt and plaintiff's counsel pursued a lawsuit against Defendants after learning Plaintiff did not pay her debt, an issue that the Ninth Circuit has plainly held is *irrelevant*, but the Court found to be extremely important.

Examples of this belief are everywhere in the Orders. For example, "Plaintiff alleged she fulfilled her obligations on the debt by providing Defendants with access to her checking account, yet Defendants' subsequent efforts to collect the funds violated the FDCPA and the Rosenthal Act. Plaintiff did not repay any portion of her debt." Dkt #66, 2:15-17; "Judge Donato rejected Plaintiff's argument that she upheld her side of the agreement simply by providing URS with a checking account number." Id., 2:21-23; "For Forto to say now that her side of the deal was merely to give URS an account number and then wish it well flies in the face of the express terms she agreed to." Id., 2:23-25; "Her default excused defendants from any obligations to her under the repayment agreement, and not the other way around. Defendants were perfectly entitled to terminate the agreement with Forto after she failed to live up to the payment plan." Id., 3:1-2; "And given Forto's 'total failure in the performance of the contract,' a reasonable jury could not find that her breach was immaterial." Id., 3:3-4."

The Magistrate Judge also correctly noted that, "Courts have declined to find bad faith where the plaintiff's claims are 'minimally colorable.' [citation]," but then found "[t]he

undersigned cannot make such a finding here. Judge Donato found that '[i]f there was an impediment to realizing the terms of the agreement, it was Forto's own conduct, namely the failure to provide a usable account number, and she cannot bootstrap her own defaults to excuse performance under the agreement.'" Dkt #66, 7:6-8. This demonstrates that the Magistrate Judge found bad faith here because Forto did not "performan[e] under the agreement" and pay her debt. But again, the Ninth Circuit has held that this is irrelevant.

The Court then states, "Defendants were perfectly entitled to terminate the agreement with Forto after she failed to live up to the payment plan." Dkt. # 54, 5:12-13.  Perhaps, and perhaps not, but again that is irrelevant here as "failing to live up to the payment plan" is of no consequence.  A valid or invalid debt does not impact a consumer's action in any way as the Ninth Circuit has held that whether a debt is owed is irrelevant under the FDCPA. (Further, the Ninth Circuit has also found that while Defendants *might* have been entitled to "terminate the agreement" (depending on if the terms in the agreement provide for that), they certainly were not thereafter entitled to collect an inflated amount under the previous contract as the previous contract was no longer operative. *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1091 (9th Cir. Cal. 1989) (When parties to a first contract negotiate a second contract, an action on the contract is not based on the first contract, but on the balance confirmed by the parties in the second contract.) But suing Plaintiff on the first contract is exactly what Defendants did in their state action, in violation of the FDCPA, and contrary to the holding in *S.O.S., Inc. v. Payday, Inc.*)

The Magistrate Judge goes on to state:

> Plaintiff offers no reason why she did not know at the outset of this litigation that she did not make a single payment on the debt and that she actively evaded URS' attempts to correct the erroneous bank account number so as to prevent URS to recover the debt pursuant to the parties' agreement. These facts rendered her claims meritless and demonstrate her lawsuit was brought in bad faith. The undersigned therefore cannot find Plaintiff's claims were "minimally colorable."

Dkt. #66, 7:14-17.

This language again demonstrates that the Magistrate Judge did not understand that whether a debt is owed is of no relevance under the FDCPA and Rosenthal Act and that in fact

the Magistrate Judge viewed this owed debt as demonstrating bad faith.  The issue here is not the debt, the issue is how Defendants attempted to collect the debt. Consequently, these facts **did not** rendered her claims meritless, as the Magistrate Judge claims, and **did not** demonstrate Plaintiff's lawsuit was brought in bad faith, so any fees award is unreasonable.

The Court also places great emphasis on the idea that Plaintiff "inverted the law and received documents wholly refuting their claims." Dkt. #66, 8:1-2.  Once again this demonstrates that the Court believed that since Plaintiff allegedly "received documents" "wholly refuting her claims" that Plaintiff had properly addressed her debt, this means Plaintiff acted in bad faith by suing under the FDCPA, because after receiving these documents Plaintiff knew she had not paid her debt.  But again, this demonstrates a fundamental misunderstanding by the Magistrate Judge as the Magistrate Judge did not understand that whether a debt is owed is in no way relevant to Plaintiff's FDCPA and Rosenthal Act claims.

**B. Neither finding by the Magistrate Judge supports an award for attorneys' fees.**

Congress encourages private enforcement of the FDCPA by permitting aggrieved individuals to bring suit as private attorneys general. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). The Magistrate Judge's order contemplates two possibilities for an award of attorneys' fees; one as to Plaintiff, and one as to "plaintiff's counsel." Neither statute provides a basis for attorneys' fees here. The first possibility is "excess fees" against "plaintiff's counsel" pursuant to 28 U.S.C. § 1927, whoever that may be, while the second possibility is apparently "all fees" pursuant to Cal. Civ. Code § 1788.30, and against Plaintiff.

However, excess attorneys' fees under 28 U.S.C. § 1927 can only be awarded against an individual attorney, personally, and here any such award would be *per se* unreasonable as URS has failed to request fees from a *specific* individual attorney for *specific* conduct that it claims caused URS to incur *specific excess* fees for some *specific* multiplication of the proceedings. Instead URS asks for everything, generally, and from "plaintiff and plaintiff's counsel."

As for Cal. Civ. Code § 1788.30, an award would also be *per se* unreasonable as the Magistrate has found that Plaintiff did not act to harass by stating "But there is nothing in the record that suggests Plaintiff brought this lawsuit to harass URS. … In short, while the

undersigned finds Plaintiff brought this action in bad faith, there is no evidence that Plaintiff sought to harass URS." Dkt. #66, 7:27; id., 9:10-11, However, the purpose to harass has been a requirement under the Rosenthal Act since 1999, after the legislature amended § 1788.30.

## II. Argument

### A. Any fees requested under 28 U.S.C. § 1927 are *per se* unreasonable as URS has failed to request fees from a specific individual attorney for specific conduct that unreasonably and vexatiously caused URS to incur specific fees.

28 U.S.C. § 1927 provides as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C.A. § 1927.

### 1. URS's fee request does not identify any specific attorney.

When a district court sanctions a law firm under 28 U.S.C. § 1927, as URS requests here, it abuses its discretion because 28 U.S.C. § 1927 applies only to individual attorneys. *Kaass Law v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1295 (9th Cir. 2015).  Here, URS asks for all attorneys' fees (not the requisite "excess") from "plaintiff's counsel," or the law firm of Hyde & Swigart. Otherwise, which attorney is URS arguing should "personally" be held responsible; for what excess fees; for what conduct; and for what evidence of "subjective bad faith?"

In *Kaass*, the Ninth Circuit held as follows:

> In *Claiborne v. Wisdom*, the Seventh Circuit considered "whether a law firm is subject to sanctions under § 1927," and held that "[i]ndividual lawyers, not firms, are admitted to practice before both the state courts and the federal courts.... It is too much of a stretch to say that a law firm could also be characterized as such a person." 414 F.3d 715, 722–23 (7th Cir. 2005). The Seventh Circuit further reasoned:

> Our conclusion has the virtue of being consistent with the rationale the Supreme Court used in *Pavelic & Le Flore v. Marvel Entertainment Group*, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989), when it considered the question whether sanctions were possible against a law firm under an earlier version of FED. R. CIV. P. 11. (The rule was amended as of December 1, 1993, to ensure that law firms could be subject to sanctions under its authority.) In *Pavelic & Le Flore*, however, the Court had to construe language that

permitted sanctions only against "the person who signed" the offending document.... The Supreme Court [found] that in context the phrase "the person who signed" could only mean the individual signer, not his partnership, either in addition to him or in the alternative. The language of § 1927 raises exactly the same problem as the earlier version of Rule 11.

*Id*. at 723.  We find this reasoning persuasive.

*Kaass Law v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1293–94 (9th Cir. 2015)(holding that a law firm cannot be sanctioned under 28 U.S.C. § 1927.)

Further, "[s]anctions pursuant to section 1927 must be supported by a finding of subjective bad faith." *Trulis v. Barton*, 107 F.3d 685, 694 (9th Cir. 1995), citing *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989).

Here, URS argues for attorneys' fees and costs against "plaintiff's counsel" - nothing else, leaving it to the Court to fill in the blanks rather than meet its burden.  URS never even *suggests* anyone, personally, acted in subjective bad faith, much less *establish* subjective bad faith. URS is not requesting excess attorneys' fees from an "individual lawyer" "personally" as required by *Kaass*, and consequently there is no one to "satisfy personally" any attorneys' fees award.  URS never even mentions an individual attorney, except in passing. Instead, URS is requesting all fees, *generally*, from "plaintiff's counsel," or the law firm of Hyde & Swigart, consisting of half a dozen attorneys. The Ninth Circuit has held that this is impermissible.  *Matter of Yagman*, 796 F.2d 1165, 1184 (9th Cir.).  "Obviously, a blanket award of all fees cannot square with 28 U.S.C. § 1927's requirement that only excess amounts be allowed. Thus, only if the award is sufficiently itemized can the court be assured that it is reasonable."

Indeed, if the Court *were* to award excess fees under 28 U.S.C. § 1927, how would the Court perform such a Herculean task as to determine what individual attorney to sanction; for what individual subjective conduct; for what multiplication of the proceedings; for how much; and for what subjective bad faith? URS provides nothing in the way of excess costs or individual conduct by any attorney that it says was a multiplication of the proceedings that caused it to incur excess costs.  As the Court's docket states, plaintiff's counsel is a general, diverse and assorted group of attorneys who did many different things; some generally, and some specifically. "Plaintiff's counsel" is correctly cited in the docket as Jessica Dorman; Sara

Khosroabadi, and Joshua Swigart, as well as the law firm of Hyde & Swigart. However, Robert Hyde (again, with Hyde & Swigart) was also a member of "plaintiff's counsel," and URS also names another attorney no longer with Hyde & Swigart, Laila Khosroabadi. Dkt. #63, 8:7.

URS also acknowledges the merit of Plaintiff's argument here when, in URS's Reply to Plaintiff's Opposition to Attorneys' Fees URS attempts to *change* its motion, and its story, and introduce a *new* argument that URS hopes is more acceptable to the Court under 28 U.S.C. § 1927, claiming that what URS *really meant* when it said "plaintiff's counsel" was *a group of individual attorneys and all those individual attorneys should be sanctioned*. "Although Plaintiff claims that her individual counsel has not been identified, to be clear, URS is requesting an award of attorneys' fees against: Laila Thompson of the law firm Hyde & Swigart; Sara Khosroabadi of the law firm Hyde & Swigart; and Jessica R. K. Dorman of the law firm Hyde & Swigart."   But rewording this argument by naming a group of attorneys at the law firm is essentially the same thing as what *Kaass* found to be improper. The burden here is on URS. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (The burden.)   URS has failed to meet its burden, and consequently any fee request under 28 U.S.C. § 1927 is not reasonable.

Additionally, Plaintiff has objected to URS changing its argument in its Reply, and does so once again now, as such a tactic unfairly prejudices Plaintiff because Plaintiff has never been given the opportunity to respond to URS's ever changing story. "Arguments not raised by a party in its opening brief are deemed waived." *United States v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006) (citing *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999)); *Bazuaye v. INS*, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived."); *State of Nev. v. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990) ("[Parties] cannot raise a new issue for the first time in their reply briefs." (citations omitted)); *Ass'n of Irritated Residents v. C & R Vanderham Dairy*, 435 F. Supp. 2d 1078, 1089 (E.D. Cal. 2006) ("It is inappropriate to consider arguments raised for the first time in a reply brief."); *United States ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers.")

In summary, when URS requests attorneys' fees against "plaintiff's counsel," under 28 U.S.C. § 1927, it is not requesting sanctions from an individual lawyer as 28 U.S.C. § 1927, and *Kaass*, require, so any attorneys' fees under 28 U.S.C. § 1927 would not be reasonable attorneys' fees.

### 2. URS's fee request also does not identify any "conduct" that "multiplied" the proceedings and caused URS to unreasonably and vexatiously incur "excess" costs reasonably incurred because of such conduct.

"Section 1927 authorizes the taxing of only excess costs incurred because of an attorney's unreasonable conduct; it does not authorize imposition of sanctions to reimburse a party for the ordinary costs of trial." *United States v. Associated Convalescent Enterprises, Inc.*, 766 F.2d 1342, 1347–48 (9th Cir. 1985), citing *United States v. Blodgett*, 709 F.2d 608, 610–11 (9th Cir.1983). It applies only to unnecessary filings and tactics. *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996). Here URS makes no attempt to differentiate between fees or costs incurred in the normal and natural course of litigation and any alleged excess attorneys' fees or costs that URS believes it incurred due to some unreasonable, vexatious, unnecessary filings or tactics by some individual attorney. URS provides no evidence of *excess* costs, and never even asks for any *excess* costs.

For example, URS improperly seeks attorneys' fees and costs from the inception of the lawsuit, including fees and costs incurred in responding to Plaintiff's initial pleadings. However, the Ninth Circuit, *to the point of sounding annoyed that it has to say it yet again*, has made it clear that attorneys' fees and costs cannot be awarded under 28 U.S.C. § 1927 for "initial pleadings," and the request by URS for those attorneys' fees and costs is itself frivolous, as the Ninth Circuit makes very clear.

> Because the section authorizes sanctions only for the "multipli [cation of] proceedings," it applies only to unnecessary filings and tactics once a lawsuit has begun. We have twice expressly held that § 1927 cannot be applied to an initial pleading. See see [*Zaldivar v. Los Angeles*, 780 F.2d 823, 831 (9th Cir.1986)] (under § 1927, "the *multiplication* of proceedings is punished, thus placing initial pleadings beyond" the section's reach) (emphasis in original); *Matter of Yagman*, 796 F.2d 1165, 1187 (9th Cir.) ("Section 1927 does not apply to initial pleadings, since it addresses only the multiplication of proceedings. It is only possible to multiply or

prolong proceedings after the complaint is filed."), *amended*, 803 F.2d 1085 (9th Cir.1986). In case these prior holdings were insufficiently clear, we restate the rule here. The filing of a complaint may be sanctioned pursuant to Rule 11 or a court's inherent power, but it may not be sanctioned pursuant to § 1927. "For a sanction to be validly imposed, the conduct in question must be sanctionable under the authority relied on." *Cunningham v. County of Los Angeles*, 879 F.2d 481, 490 (9th Cir.1988) (internal quotations omitted), *cert.* denied, 493 U.S. 1035, 110 S.Ct. 757, 107 L.Ed.2d 773 (1990). Here it was not. The district court's imposition of sanctions under § 1927 was an abuse of discretion.

*In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996).

It is crucial, therefore, that a sanctions award be quantifiable with some precision and properly itemized in terms of the perceived misconduct and the sanctioning authority. Different rules, regulations and statutes provide sanctions for different forms of misconduct. For example, section 1927 provides for the recovery of the excess attorney's fees incurred as a result of misconduct which multiplies the proceedings. *United States v. Associated Convalescent Enterprises, Inc.*, 766 F.2d 1342, 1347–48 (9th Cir.1985); *see also Zaldivar v. City of Los Angeles*, 780 F.2d 823, 829–30 (9th Cir.1986). Obviously, a blanket award of all fees cannot square with the section's requirement that only excess amounts be allowed. Thus, only if the award is sufficiently itemized can the court be assured that it is reasonable.

*Matter of Yagman*, 796 F.2d 1165, 1184 (9th Cir.), opinion amended on denial of reh'g sub nom.

*In re Yagman*, 803 F.2d 1085 (9th Cir. 1986).   When the sanctions award is based upon attorney's fees and related expenses, an essential part of determining the reasonableness of the award is inquiring into the reasonableness of the claimed fees. Recovery should never exceed those expenses and fees that were reasonably necessary to resist the offending action. However, URS says that it wants *everything*, from *everybody*, and for *all conduct,* and provides no detail as to what any particular attorney subjectively did to warrant sanctions. The Ninth Circuit has held that this is clearly unacceptable, and for this reason alone an award to URS under 28 U.S.C. § 1927 must be denied as being imprecise and not reasonable.

**B. Any fees awarded against Plaintiff pursuant to Cal. Civ. Code § 1788.30 are *per se* unreasonable.**

The Magistrate Judge relied on the idea that "[u]nlike the FDCPA, the Rosenthal Act does not require a finding of intent to harass in order to award attorneys″ fees to a prevailing creditor." Dkt. #66, 9:21-22. However, is not true. In 1999, California's legislature amended the Rosenthal Act through Assembly Bill 969, by adding Cal. Civ. Code § 1788.17, which clarified,

among other things, that Cal. Civ. Code § 1788.17 supercedes any part of the Rosenthal Act that is inconsistent the FDCPA, by replacing the remedies found in the FDCPA. *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1065 (9th Cir. Cal. 2011) ("By use of the phrase 'notwithstanding any other provision,' the 1999 amendment unambiguously supercedes any provision of the Rosenthal Act inconsistent with the referenced provisions of the FDCPA, including those subjecting debt collectors to class actions.")  See also, *Landry v. Bank of Am., N.A. (In re Landry)*, 493 B.R. 541, 569 (Bankr. E.D. Cal. 2013) ("This bill provides that violators [of California's Rosenthal Act] shall be subject to the remedies in Section 1692k of Title 15 of the United States Code….)  The the remedies in "Section 1692k of Title 15 of the United States Code" provides that "[o]n a finding by the court that an action under this section was brought in bad faith **and for the purpose of harassment**, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." (Bold face added.) Here, the Court expressly found that Plaintiff did not file her case for the purpose of harassment, stating, "there is nothing in the record that suggests Plaintiff brought this lawsuit to harass URS." Dkt #66, 7:27.

This lack of harassment, along with the fact that whether Plaintiff owed or did not owe the debt is irrelevant, a misconception by the Court, makes it clear that fees under Cal. Civ. Code § 1788.30 would be unreasonable.

**C. URS has not met its burden with regard to establishing fees.**

**1. URS has not met its burden as to a reasonable hourly rate.**

The Ninth Circuit has held that when determining the reasonable hourly rate to award an attorney in an FDCPA action, the district court must consider the hourly rates charged "in the community for similar services by lawyers of reasonably comparable skill, experience and reputation"; the relevant community for this analysis is "the forum in which the district court sits." See *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (reversing district court that awarded fees in FDCPA action based upon rates awarded in other states).  "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits. *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir.1997). "[R]ates outside the forum may be used if local counsel was unavailable, either because they are unwilling or unable to

perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Id*. (citation and internal quotation marks omitted). Neither party contends that an exception to the general rule applies in this case; [in fact it is undisputed that URS chose *not* to retain local counsel,] and therefore, the relevant community is the Northern District of California (the Northern District)." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

Mr. Carnes, who was licensed to practice in Illinois in October of 2013, but has never been licensed in California, asks for 25% more per hour than Gregory Thomas, even though Mr. Thomas is far more experienced and actually does practice law legally in California, with 12 years of experience. Dkt No. 56-2, 56-4.

"To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895, n.11 (1984). As we have noted, "[a]ffidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases ... are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir.1990). *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008).

The Court must also explain "the prevailing hourly rate in that community" charged by similarly-situated attorneys performing the type of work at issue, "identify which facts" led to its conclusion about the appropriate hourly rate and explain why that rate is appropriate. *Camacho*. at 979-80. To aid the court in its determination, and ultimately to meet its burden of showing that the hourly rates sought by its attorneys were reasonable, URS is required to "produce satisfactory evidence – *in addition to the attorney's own affidavits* – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id*. at 980 (emphasis supplied; quoting *Blum v. Stenson*, 465 U.S. 886, 895, n.11 (1984)). Here URS provides *no* evidence and *only* its own affidavits.

"However, declarations filed by the fee applicant do not conclusively establish the prevailing market rate." *Camacho*, 523 F.3d at 980. Here, not only does URS fall well short of meeting its burden – it does not submit even a single affidavit or declaration beyond those of its own counsel.   Furthermore, URS seeks fees for counsel who did not even bother to submit declarations. For instance, URS requests $1,000.00 for Patrick W. Chinnery, $800.00 for Stephen Kienzle, $600.00 for Meg L. McNair, $4,225.00 for Michael J. Hornback, $250 for "CDA" a person who has not been identified at all in this matter, $2,800 for Lauren O. Miller, $1,040.00 for Adam A. Vukovic and $760.00 for Sophia Cohn- for a total of $11,475.00.  URS has failed to provide declarations or affidavits as to the reasonableness of the fees or the hourly rate for these requests,  again failing to meet its burden of showing that the hourly rate sought is reasonable or that the hours expended are reasonable.

URS should not be awarded the $11,475.00 in fees it requests for Patrick W. Chinnery, a non-attorney, Stephen Kienzle, a non-attorney, Meg L. McNair, a non-attorney, Michael J. Hornback, a non-attorney, "CDA" (probably a non-attorney), Lauren O. Miller, a non-attorney, Adam A. Vukovic, a non-attorney and Sophia Cohn, a non-attorney.  Who these people are goes unexplained, and none of them swear under oath that their fees are true and correct.

**2. URS has not met its burden as to reasonable hours.**

**i. Fees cannot be awarded for Mr. Carnes' illegal practice of law.**

On April 1, 2015, at the Initial Case Management Conference, the Court issued an order staying the matter; instructing the parties and their counsel to attend private mediation; attempt to settle the case; and report back within 90 days. Dkt #27.  The parties thereafter agreed to mediate before Maureen A. Summers, Esq., in San Diego, with the mediation to occur on June 24, 2015. On May 29, 2015, Mr. Carnes sent a letter to Ms. Summers, in San Diego, wherein he represented to Ms. Summers that he was the "'Counsel for Capital One Bank, National Association, d.b.a. Capital One Bank (USA) N.A., and United Recovery Systems LP." Dkt. #61-5. Mr. Carnes was now representing that he was the attorney for both defendants and that he was representing those parties in San Diego even though, again, he was unlicensed in California.  In this same document, which Mr. Carnes signed, was the following:

**Signature by All Participants**: All participants to the mediation are required to sign this Mediation and Confidentiality Agreement and Disclosure of Prior Contacts. This includes the parties, counsel, insurance representatives and any others who may be planning to attend.  The Agreement sets forth the terms and conditions under which the mediation will proceed. The Disclosure is intended to inform all parties and counsel of any prior mediation, arbitration, discovery, settlement services or other contacts between any of the parties, counsel and Ms. Summers. Please return one fully executed agreement to Ms. Summers prior to or at the mediation hearing.

Dkt. #61-5

Thereafter, both defendants ignored the Court's order and sent not a single licensed attorney to the mediation, sending only a Branch Manager - and the unlicensed Mr. Carnes. Id. Further still, neither Capital One nor its attorney appeared. Id. At this mediation, Mr. Carnes falsely claimed to be the attorney for both "Capital One Bank, National Association, d.b.a. Capital One Bank (USA) N.A. and United Recovery Systems LP."  Mr. Carnes, in a statement signed by him on June 22, 2015, which Ms. Summers and plaintiff's counsel relied upon, represented that he was licensed in California, and that he would thereafter attend the mediation, which he did, falsely representing himself as the attorney for all defendants. Id. Through this, the Defendant ignored the Court's April 1, 2015 order requiring the parties and their counsel to mediate in an attempt to settle the case, but Mr. Carnes now hopes to be awarded fees for Defendants' recalcitrance.

Mr. Carnes had been engaging in the unauthorized practice of law, and it was not until February 2, 2016 that he made a motion to appear *pro hac vice*, and that occurred only after he was caught by the Court falsely appearing as an attorney of record during a telephonic hearing. Dkt, # 40; See also [Dkt. No. 67-16 pg 12 entry dated 1/19/2016]. California's Bus. & Prof. Code § 6125 provides that "No person shall practice law in California unless the person is an active member of the State Bar."  However, Mr. Carnes now hopes to be paid for his illegal behavior as well.

The penalties for the unauthorized practice of law in California, set out in Bus. & Prof. Code § 6126  include a fine of up to one thousand dollars ($1,000), up to one (1) year in county jail, or both.  In these cases, the unauthorized practice of law is a "wobbler" in California law - which means Mr. Carnes may be charged as a misdemeanor or a felony. The potential felony jail

1    sentence can go as high as three (3) years. *Id*. However, rather than being criminally charged,

2    Mr. Carnes now asks the Court to reward him.

3        No one may recover compensation for services as an attorney at law in California
          unless that person was a member of the State Bar at the time those services were
4        performed. *Golba v. Dick's Sporting Goods, Inc*., 238 Cal. App. 4th 1251, 1261-62, 190
          Cal. Rptr. 3d 337, 344 (2015). "Authority to engage in the practice of law conferred in
5        any jurisdiction is not *per se* a grant of the right to practice elsewhere, and it is improper
          for a lawyer to engage in practice where he [or she] is not permitted by law or by court
6        order to do so. ..."

7    *Birbrower, Montalbano, Condon & Frank v. Superior Court*, 17 Cal. 4th 119, 129 (1998).

8                          ***a. Winterrowd v. Am. Gen. Annuity Ins. Co.***

9        In its briefing, URS looks to *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815 (9th

10   Cir. 2009) claiming URS is entitled to fees and costs for Mr. Carnes' unlawful practice of law in

11   California. In *Winterrowd,* the Ninth Circuit awarded fees to an out of state attorney (Wheatley

12   Sr.) whose conduct "did not rise to the level of 'appearing' before the district court." *Id* at 823.

13   The Ninth Circuit went on to further explain that physically coming into court and identifying

14   oneself as opposing counsel are examples of 'appearances'. *Id*. Here, Mr. Carnes admits to

15   attending the telephonic hearing with Judge Donato prior to his application for *pro hac vice* [Dkt.

16   No. 67-16 pg 12 entry dated 1/19/2016], where he was admonished for appearing before the

17   Court, and now he expects to awarded attorneys' fees for his hours spent violating this Court's

18   local rules [Local Rule 11-1; 11-3 and 11-4] as well as California's Bus. & Prof. Code § 6125.

19       In *Winterrowd*, the Ninth Circuit found Wheatley Sr. did not violate the ethics code because

20   his work was similar to that of support staff. *Id* at 824. ([Wheatley Sr.] had the role of advising

21   his son and reviewing pleadings, which he did with minimal, nonexclusive contact with the client

22   and no communication with opposing counsel. Moreover, Wheatley, Sr., did not even physically

23   enter the State of California in connection with the prosecution of this case.) The same cannot be

24   said in this matter. Mr. Carnes not only attended a telephonic hearing where he attempted to

25   argue in front of this Court, he held himself out to be Counsel for URS and Capital One at the

26   mediation in California. Dkt. No. 61-5. The billing records also reflect that he was the main

27   contact for URS, personally advising URS as to the strategy to employ in defending this matter.

28

Dkt. No. 67-1:20.   For nearly a year, Mr. Carnes engaged in the unauthorized practice of law, and now wants to be rewarded for this behavior.   This Court should deny all fees requested by Rock Fusco & Connelly, LLC prior to the Court granting Mr. Carnes' application to appear *pro hac vice*.   Dkt. No. 41.

### ii. URS should not be awarded attorneys' fees for administrative tasks such as reviewing  billing and making travel arraignments.

"Some courts hold that clerical work is part of an attorney's overhead subsumed within the hourly rate and should not be requested separately." *Oberfelder v. City of Petaluma*, No. C-98-1470 MHP, 2002 WL 472308, at *8 (N.D. Cal. Jan. 29, 2002), *aff'd sub nom. Oberfelder v. Bertoli*, 67 F. App'x 408 (9th Cir. 2003). *See* also *Volpe v. City of Hawthorne,* 644 F.Supp. 1312, 1316 (C.D.Cal.1986) (reducing the total claimed time in order that the fee request reflect "billing judgment").   "The court recognizes the general rule that hours not properly billed to one's client also are not properly billed to one's adversary." *See Ramos v. Lamm,* 713 F.2d 546, 553 (10th Cir.1983). *Id*.

URS' billing records are inflated with administrative tasks that should not be awarded.   Just as an example, Mr. Carmes requests 4.5 hours or $1,1250.00 for reviewing "billing issues," either overpayment or underpayment for local counsel's billing.   These hours are clerical work that is part of an attorney's overhead.   These are not hours that Mr. Carnes would have billed URS, therefore URS cannot now seek them from Plaintiff or Plaintiff's Counsel.   Additionally, Mr. Carnes requests 3.2 hours or $800.00 for time spent making, reviewing and revising travel plans.   Again these are administrative tasks that should be part of the attorney's overhead.

Therefore, URS should not be awarded fees for any administrative tasks.

### iii. URS should not be awarded for non-contemporaneous fees.

The Ninth Circuit prefers contemporaneous records of hours worked. *Fischer v. SJB–P.D., Inc.,* 214 F.3d 1115, 1121 (9th Cir.2000). "Reconstructed records developed from litigation files 'provide the district court with a reason to reduce the fee.'" *King v. GEICO Ins. Co.*, No. CV 12-92-BLG-RWA, 2014 WL 1789460, at *3 (D. Mont. May 5, 2014).

There are several entries within Rock Fusco & Connelly, LLC's billing that indicate these

records were not kept contemporaneously. For example, on June 26, 2015, Patrick W. Chinnery indicates he spent .3 hours "discuss[ing] mediation strategy with Brandon Carnes." Dkt. No. 67-16, pg 7.   The mediation took place on June 24, 2015, two days prior to the date of this entry. Discussing mediation strategy after mediation has taken place does not seem logical.   Another such example is an entry from Rock Fusco & Connelly, LLC, on July 14, 2015 where Mr. Carnes claims he "[r]eview[ed] and respond[ed] to email from local counsel regarding extension of time to answer the complaint." Dkt.  No.  67-16, pg 8. Both Defendants filed their answers four months prior to the date of this entry. Dkt. Nos. 18, 26. There would have been no reason to discuss the "extension of time to answer the complaint" in July 2015.   Yet another example that these billing records are not contemporaneous records is an entry on April 18, 2017, where Mr. Carnes claims he spent .2 hours "[confer[ring] with Janet DeYoung concerning stipulation of protective order."  Dkt. No. 67-16, pg 18.  The only possible reason to discuss a protective order would have the protective order filed by URS on October 13, 2015.  Dkt. No. 35.  The only conceivable explanation is that this entry was added for the purposes of this fee brief, to over-inflate the already inflated fees URS is seeking.  Perhaps the most telling evidence that these records were not kept contemporaneously and have been inflated is the email from Mr. Carnes to Plaintiff's Counsel on March 3, 2016, over two years into litigation, where Mr. Carnes admits URS' fees and costs are $18,000.00.  See Declaration of Sara Khosroabadi, Exhibit A.  URS is now asking the Court to award $37,268.57, (over twice the amount) for the fees and costs they purportedly incurred through Rock Fusco & Connelly, LLC, and Boornazian, Jensen & Garthe, from the inception of the case through March 2, 2016 the date which Mr. Carnes claimed URS had $18,000 in fees and costs.

### iv. URS should not be awarded fees for excessive and duplicative billing.

"'[E]xcessive, redundant, or otherwise unnecessary' hours should be excluded from a fee award, and charges that are not properly billable to a client are not properly billable to the government." *Hensley*, 461 U.S. at 434. *Young v. Berryhill*, No. 2:14-CV-2585-EFB, 2017 WL 4387315, at *2 (E.D. Cal. Oct. 3, 2017).

The district court did not exceed its "authority to make across-the-board cuts," when it

provided "a concise but clear explanation of its reasons," *Gates v. Deukmejian,* 987 F.2d 1392, 1399–1400 (9th Cir.1993) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The court identified and explained in a 38–page opinion why substantial reductions were warranted in a record establishing excessive and duplicative billing, and "replete" with "needless peer review, particularly between experienced outside and local counsel," that "unnecessarily increased the cost of litigation." Ash Grove Cement Co. v. Liberty Mut. Ins. Co., 649 F. App'x 585, 589 (9th Cir. 2016).

URS should not be awarded fees for duplicative billing by its national and local counsel. One such example of the duplicative billing is URS' requests for this court to grant 31 hours or $9,500 for work performed by Mr. Carnes and Mr. Thomas in responding to Plaintiff's requests for production of documents. These requests included 12 Requests for Admissions, 18 Requests for Production of Documents and 19 Special Interrogatories for a total of 49 discovery requests to Capital One; and 18 Request for Admissions, 18 Requests for Production of Documents and 20 Special Interrogatories for a total of 56 discovery requests to URS. These requests were not so numerous as to warrant 31 hours of work.

### 3. URS improperly seeks fees for work performed for or by Capital One and these fees should not be awarded.

Additionally, URS seeks attorneys fees for work performed by its national and local counsel for Capital One. Capital One, has withdrawn its motion for attorneys fees. Thus, it is unreasonable for URS to now claim that Plaintiff and or Plaintiff's Counsel are responsible for any fees for work performed for Capital One. Dkt No. 67-16.

### D. Genuine issues of disputed fact existed here, and had the Court not granted summary judgment Plaintiff would have proven what URS admitted in its affirmative defense - URS violated the FDCPA and Rosenthal Act.

The District Judge summarily rejected Forto's good faith assertion that genuine issues of material fact exist here. Dkt. #54, 5:4-5. The Magistrate Judge then relied on this and found that because Plaintiff's declarations were "self-serving" this demonstrates bad faith on the part of Plaintiff. Dkt. #66, 12:7-10. ("Forto's effort to find refuge in purported fact disputes over the

parties agreement is also misdirected. She fails to show any genuine dispute of material fact here, and her subjective (and self-serving) interpretations of the agreement do not amount to a relevant consideration.") But of course, Plaintiff's interpretation of which contract was the operative contract *was* relevant. As demonstrated above, the operative agreement between Plaintiff and Defendants dictated what was owed; if the first contract was the operative contract, which Plaintiff disputes, the amount owed was the greater figure, $2,940.83; on the other hand, if the second contract was the operative contract, which Plaintiff argues *is* the case here, the amount owed was the lesser figure of $1,911.54, and this forms the basis of the claims under 15 U.S.C. § 1692f(1) and California's Rosenthal Act.

To reject Plaintiff's declaration on this point, the District Judge criticized Plaintiff by claiming that her declaration was "self-serving" and therefore they did "not amount to a relevant consideration." The Magistrate Judge also used this same reasoning to find Plaintiff acted in bad faith. "She fails to show any genuine dispute of material fact here, and her subjective (and self-serving) interpretations of the agreement do not amount to a relevant consideration." Dkt. #66, 2:25-27 and Dkt. #66, 12:7-10. However, the Ninth Circuit rejects the Court's criticism and actually finds Plaintiff's conduct to be "proper." "As we have previously noted, declarations oftentimes will be "self-serving"—"**[a]nd properly so**, because otherwise there would be no point in [a party] submitting [them]." *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007), citing *United States v. Shumway*, 199 F.3d 1093, 1104 (9th Cir.1999). (Bold face added.)

Consequently, characterizing, and dismissing without consideration, the properly submitted declarations of Plaintiff as "self-serving," and finding this established bad faith on the part of Plaintiff and her counsel was unwarranted, establishing yet another reason fees here are unreasonable.

**E. The Ninth Circuit has held that when an attorney presents a colorable case, sanctions are unwarranted. Consequently, here any fee award would be unreasonable.**

Literally, since the first day of litigation, Plaintiff has alleged, *specifically*, that Defendants violated both the FDCPA and California's Rosenthal Act by attempting to collect a debt in excess of

what was owed. Dkt #1, 6:18-28, ¶ 36, (alleging a violation of 15 U.S.C. § 1692f(1).) Plaintiff also alleged other violations as well, *generally*, but the Court summarily rejected those allegations, by stating, "The face of the Complaint therefore undermines Plaintiff's contention that she asserted 'at least ten good faith violations' of the FDCPA and the Rosenthal Act. Rather, it appears Plaintiff has raised several of these alleged violations for the first time in her Opposition; she did not raise them in her Complaint or address them in her Opposition to Defendants'' Motion for Summary Judgment." Dkt. # 66, 6:26-28 But Plaintiff *did* raise these allegations in her complaint. Dkt #1, 3:1-2, ¶ 5, stating, "[w]hile many violations are described below with specificity, this Complaint alleges violations of the statutes cited **in their entirety**." (Bold face added.) This means that Plaintiff was alleging violations of the FDCPA and Rosenthal Act "in their entirety," while citing certain specified violations only to ensure her complaint was the "short and plain statement of the claim showing that the pleader is entitled to relief" that Fed. R. Civ. P. 8(a)(2) requires. Plaintiff could have amended her Complaint once discovery began, if the need had arisen.  URS was also free to attack this language in Plaintiff's Complaint through Fed. R. Civ. P. 12(b)(6), however it never did so, choosing to instead Answer and assert affirmative defenses admitting to violating the law.

Further, the Magistrate Judge found Plaintiff and her counsel acted in bad faith because "[i]n opposing the Motion for Summary Judgment, Plaintiff's counsel "d[id] not meaningfully dispute the facts leading to th[e] conclusion" that "Defendants'' conduct was reasonable, fair and consistent with legal collection practices." However, Plaintiff and her counsel had no obligation dispute URS's Motion for Summary Judgment.  It would certainly be an odd scenario if the movant in a summary judgment could simply make an argument and thereafter the non-movant had a duty to dispute that argument or be found to be in bad faith, but that is what the Magistrate Judge is asserting here. "As nonmoving parties, plaintiffs Hitachi and Nissan had neither the initial burden of production nor the ultimate burden of persuasion on defendants' motions, even though they had the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000) (Bold face added.)

Although Plaintiff never got the chance to present *her* case, Plaintiff's theory has always

been that both Defendants, even through their own admissions in their affirmative defenses, violated federal and state law by entering into a *new* negotiated contract with Plaintiff, and when URS was unable to collect under this new contract (due to an *irrelevant* misunderstanding about a checking account number), Capital One, using misrepresentations by URS, sued Plaintiff under the *old* contract, and for the wrong amount. Plaintiff allege that when Defendants sued Plaintiff under the *old contract*, which provided them with a claim for more money, rather than under the *new contract*, as the law requires, Defendants were violating 15 U.S.C. § 1692f(1).  And when plaintiff's counsel thereafter pointed out to defense counsel that suing Plaintiff in state court for the wrong amount was illegal under the FDCPA and Rosenthal Act, Defendants withdrew their lawsuit and recovered *nothing*. As can be seen below, this conduct violates the FDCPA and California's Rosenthal Act pursuant to 15 U.S.C. § 1692f(1) and Cal. Civ. Code § 1788.17, and indeed, even the Supreme Court of the United States has held that this conduct might well violate the FDCPA. *Heintz v. Jenkins*, 514 U.S. 291, 295, 115 S. Ct. 1489, 1491, 131 L. Ed. 2d 395 (1995) (When a litigating lawyer brings, and then loses, a claim against a debtor, "we would not find the result so absurd as to warrant implying an exemption for litigating lawyers.") And while Plaintiff did not rely on this conduct of suing Plaintiff for the wrong amount alone, it did contribute to facts and analysis considered, along with the clear language found in 15 U.S.C. § 1692f(1). See *Afewerki v. Anaya Law Grp.*, 868 F.3d 771 (9th Cir. 2017) (The overstatement of debtor's principal due in a state court action to collect that debt violates the FDCPA.")

California's Supreme Court has held that an account stated is a new contract with new terms that replaces any previous contract between the parties.  *Mercantile Trust Co. v. Doe*, 26 Cal. App. 246, 252 (Cal. App. 1914) ("An account stated requires that there be an agreement, expressed or implied, that the balance is correct and this agreement constitutes a new contract which takes the place of the original contract whether open or closed.").  It discharges the previous contract.  *R.E. Tharp v. Miller*,  261 Cal App 2d 81, 84 (1968) ("It is elementary that an account stated is an express or implied agreement between a debtor and his creditor that a certain sum shall be paid and accepted in discharge of the debtor's obligation.")  It is a compromise.  *Gardner v. Watson,* 170 Cal 570, 574 (1915) ("The action upon an account stated is not upon the original dealings and

transactions of the parties. ... It is upon the new contract by and under which the parties have adjusted their differences and reached an agreement").

Plaintiff and counsel's theory in this case has always been that Plaintiff and Capital One, through URS, entered into an account stated agreement (the second contract) between them and the fact that Plaintiff subsequently may have later breached that second contract does not reinstate the first contract amount. Consequently, when Capital One thereafter sued Plaintiff in state court for the amount stated in the first contract, it was violating 15 U.S.C. § 1692f(1) by "collecting an amount … when such amount was not expressly authorized by the agreement creating the debt." Capital One eventually dismissed its state action on the first contract without prevailing after plaintiff's counsel warned that it was violating the law, demonstrating that it acknowledged that fact, and Plaintiff would have proven that had the Court not granted URS's summary judgment.

When a debt collector uses a false, deceptive, or misleading representation or means to pursue a complaint in a state court complaint, the debt collector violates the FDCPA. *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1031-32 (9th Cir. 2010) ("…a complaint served directly on a consumer to facilitate debt-collection efforts is a communication subject to the requirements of §§ 1692e and 1692f."). See also, *McCollough v. Johnson, Rodenburg & Lauinger, LLC*:

> More recently, in *Donohue*, we applied [*Heintz v. Jenkins*, 514 U.S. 291 (1995)] and held that the FDCPA covers the service upon a debtor of a complaint to facilitate debt-collection efforts. 592 F.3d at 1031-32. We reasoned in *Donohue* that "[t]o limit the litigation activities that may form the basis of FDCPA liability to exclude complaints … would require a nonsensical narrowing of the common understanding of the word 'litigation.'" *Id.* at 1032 (rejecting a distinction between "lawyers acting in the capacity of debt collectors and those litigating").

*McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 951 (9th Cir. 2011).

In other words, when Capital One sued Plaintiff for the larger (original) debt, after the account stated had been agreed to between URS and Plaintiff, Capital One and URS, they were thereafter attempting to collect a (larger) amount that was no longer owed, in violation of 15 U.S.C. § 1692f(1). The Ninth Circuit has agreed with Plaintiff's analysis before, in *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1091 (9th Cir. Cal. 1989) (In *S.O.S.*, a party to the original contract

entered into a subsequent account stated and thereafter argued that it had a defense to the lawsuit based on that original contract. The Ninth Circuit rejected this, finding "[h]owever, even assuming *arguendo* that S.O.S. breached the contract, this would not affect the result. Under California law, an account stated is a new contract, and an action on it is not based on the original contract, but on the balance confirmed by the parties.")  This was Plaintiff's theory on this, and one of the primary reasons for suing, (see the Complaint at Dkt #1, 6:18-28, ¶ 36, alleging a violation of 15 U.S.C. § 1692f(1)), and Plaintiff would have proven this had she the opportunity.

This argument by Plaintiff was bolstered by the fact that Capital One eventually recognized it had no state case after plaintiff's counsel explained that Capital One was violating the FDCPA and Rosenthal Act by suing Plaintiff under the first contract, and thereafter dismissed its state action with no recovery. Dkt. #61-7. Finally, both Defendants eventually admitted to violating Plaintiff's the FDCPA and Rosenthal Act through their affirmative defenses.

Early in their Answer, both defendants alleged "the bona fide error defense." Dkt #26, 10:22-26, and *id*., #18, 10:13-16. "The bona fide error defense is an affirmative defense, for which the debt collector has the burden of proof." *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1514 (9th Cir. 1994).  An affirmative defense is *an admission by the defendants that they violated law*, but allows defendants to show that they maintain procedures to avoid violations and thereby be exempt from liability, and Plaintiff relied on that admission.

> As the plaintiff points out, the defendants in their answer to the complaint only inconsistently deny this allegation. In their tenth affirmative defense, they assert that the complaint is barred, "because the named and opt-in Plaintiffs or others allegedly similarly situated were exempted from the FLSA overtime requirements ...". Cf. *The Board of Governors of Wayne State University v. Bajkowski*, 1987 WL 12911, at *1 (N.D.Ill. June 19, 1987) ("**The basic concept of an affirmative defense is an admission of the facts alleged in the complaint, coupled with the assertion of some other reason defendant is not liable.**")

*Harrington v. Educ. Mgmt. Corp.*, No. 02 CIV. 0787 (HB), 2002 WL 1009463, at *2 (S.D.N.Y. May 17, 2002), citing *The Board of Governors of Wayne State University v. Bajkowski*, 1987

WL 12911, at *1 (N.D.Ill. June 19, 1987) (Bold face added.)

Consequently, when URS alleged the affirmative defense of bona fide error, and thereafter never provided a reason why it should not be held liable, which would have had to be in the form of proving its violations were unintentional and occurred notwithstanding the maintenance of procedures to avoid the violations [see, *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002 (9th Cir. 2008)], URS was admitting to violating the FDCPA and California's Rosenthal Act and never provided a reason why it should not be held liable, an admission that was not at all unreasonable for Plaintiff to have relied on in bring her case.

So when the Magistrate Judge states that "the record shows that for nearly three years, Plaintiff's counsel's conduct has forced URS to waste time and resources defending an action that, from the beginning, lacked a factual basis" [Dkt. #66, 12:19-20] this is simply untrue. The record shows that just the opposite is true. Defendants' conduct, the admissions by URS and Capital One; the dismissal of the state case with no recovery; the state lawsuit attempting to collect the inflated debt; and Defendants' admission through their affirmative defenses of bona fide error without ever providing any evidence as to why Defendants should be excused for their unlawful conduct; all presented Plaintiff and counsel with far more than the "minimally colorable argument" the Ninth Circuit has found adequate to avoid sanctions, and all of this was established very early in litigation. As the Magistrate Judge notes, the Ninth Circuit has held that even a merely colorable argument excludes a finding of bad faith. Dkt #66, 7:1-2, citing *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 940 (9th Cir. 2007) (Even minimally colorable arguments are not bad faith) and the evidence in this case was immense. Consequently, there was no bad faith here, which is required by both the 28 U.S.C. § 1927 or Cal. Civ. Code § 1788.30(c), and therefore there can be no reasonable award of attorneys' fees.

**III. Conclusion**

It is axiomatic that in litigation there is a winning party and a losing party, but that alone does not establish bad faith on the part of the losing party. Congress has found "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies,

1  to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. §

2  1692(a).   Here, URS, a debt collector, sees an opportunity to chill vigorous advocacy for

3  consumers. On the other hand, Capital One, the creditor, to its credit, sees no bad faith for this

4  identical conduct. Dkt. No. 60.

5       A "district court would necessarily abuse its discretion if it based its ruling on an

6  erroneous view of the law...." *Giebelhaus v. Spindrift Yachts*, 938 F.2d 962, 964 (9th Cir.1991)

7  (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110

8  L.Ed.2d 359 (1990)).) Throughout its motion for attorneys' fees, deliberately or otherwise, URS

9  continues to argue about how Plaintiff owed the debt but thereafter refused to pay the debt, and

10  this argument apparently angered, and misled, the Court, as it embraced URS's argument.

11  Further, plaintiff's counsel evidently did a poor job of explaining to the Court that the Ninth

12  Circuit has held that this argument by URS is meritless.  However, whether Plaintiff failed to pay

13  the debt means nothing here.  "The statute does not make an exception for liability … when the

14  debtor does in fact owe the entire debt." *Baker v. G. C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir.

15  1982).

16       Attorneys' fees under both statutes, 28 U.S.C. § 1927 and Cal. Civ. Code § 1788.30(c),

17  provide no reasonable basis for an award here, and fees under both statutes are discretionary.

18  Because there is no reasonable basis for such an award under the law, the Court should exercise

19  its discretion and deny any fees.

21  **Respectfully submitted,**                **Hyde & Swigart**

23  Date: October 11, 2017                   By: /s/ Sara F. Khosroabadi
24                                           Sara F. Khosroabadi
                                             Attorneys for Plaintiff