UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SIMONETTE D FORTO,

Plaintiff,

v.

CAPITAL ONE BANK, NATIONAL
ASSOCIATION, et al.,

Defendants.

Case No. 14-cv-05611-JD (MEJ)

**ORDER RE: MOTION FOR
ATTORNEYS' FEES**

Re: Dkt. Nos. 66-67

**INTRODUCTION**

The undersigned granted Defendant United Recovery System, LP's (URS)[1] Motion for

Attorneys' Fees but ordered URS to submit time keeping records to allow the undersigned to

evaluate the reasonableness of the hours spent on this litigation.[2]  Order at 13, Dkt. No. 66; *see

also* Mot. for Attorneys' Fees, Dkt. No. 56.  URS submitted its records (Letter, Dkt. No. 67), and

Plaintiff Simonette Forto filed a Response (Dkt. No. 69).  Having considered the parties' records

and arguments, the undersigned issues the following order.

**DISCUSSION**

The undersigned granted the Motion for Attorneys' Fees pursuant to the Rosenthal Act,

Cal. Civ. Code § 1788.30(c), and 28 U.S.C. § 1927.  Order at 9-12.  URS seeks to recover

$61,418.20 in attorneys' fees and costs.  *See* Mot. at 14; Carnes Decl. ¶ 21, Dkt. No. 56-2; Thomas

Decl. ¶ 8, Dkt. No. 56-4; *see also* Notice of Withdrawal, Dkt. No. 60 (notice by Defendant Capital

---

[1] Now known as Alltran Financial.

[2] The Presiding Judge in this matter, the Honorable James Donato, referred the Motion for
Attorneys' Fees to the undersigned.  Notice of Referral, Dkt. No. 62.

United States District Court
Northern District of California

One Bank (USA), N.A., of withdrawal of request for attorneys' fees of $18,750).

**A.      Plaintiff's Response**

Before turning to the reasonableness of the requested fees, the undersigned addresses some of the arguments Plaintiff raises in her Response; it addresses Plaintiff's remaining arguments in considering URS' time keeping records.

### 1.      Merits of Plaintiff's Claims and Arguments

To the extent Plaintiff seeks to re-litigate her claims, this is not the proper forum to do so. *See* Resp. at 1-4 (arguing that "contrary to what the Court appears to have relied upon in making its findings, whether the debt is owed or not *is not relevant* to [] an FDCPA or Rosenthal Act action." (emphasis in original)); *id.* at 17-18 (arguing under heading "[g]enuine issues of disputed fact existed here, and had the Court not granted summary judgment Plaintiff would have proven what URS admitted in its affirmative defense – URS violated the FDCPA and Rosenthal Act" that "Plaintiff's interpretation of which contract was the operative contract *was* relevant." (emphasis in original)). The undersigned again declines to entertain such arguments. *See* Order at 6 n.3 ("To the extent Plaintiff seeks to re-litigate the merits of this action, such argument is not properly before the undersigned. The only issue before the undersigned is attorneys' fees.").

Similarly, to the extent Plaintiff seeks to re-litigate the Motion for Attorneys' Fees, this issue is also not properly before the undersigned. *See id.* at 4-5 (arguing "[n]either finding by the Magistrate Judge supports an award for attorneys' fees"); *id.* at 5-10 (arguing the fee request pursuant to 28 U.S.C. § 1927 and the Rosenthal Act are "*per se* unreasonable").[3] Plaintiff did not move the undersigned to reconsider that Order and otherwise offers no grounds for the undersigned to do so now. *See* Civ. L.R. 7-9; *see also* Dkt. No. 70 (order that Plaintiff may renew her motion for relief after the undersigned determines the actual fees and costs).

_____

[3] Plaintiff contends she "objected to URS changing its argument in its Reply, and does so once again now, as such a tactic unfairly prejudices Plaintiff because Plaintiff has never been given the opportunity to respond to URS's ever changing story." Resp. at 7. This misstates the record. Plaintiff did in fact respond: she filed an objection which discussed this issue in depth. Obj. at 1-3, Dkt. No. 64. The undersigned overruled Plaintiff's objection because URS' "Reply respond[ed] to arguments Plaintiff raised in her Opposition." Order at 4 (citing *Shamburger v. Dodson*, 2011 WL 829266, at *5 (N.D. Cal. Mar. 3, 2011)).

### 2. Brandon A. Carnes

Plaintiff's assertion that URS counsel Brandon A. Carnes "had been engaging in the unauthorized practice of law" and therefore cannot be awarded attorneys' fees is without merit. Resp. at 12-15. Although Plaintiff refers to "the unlicensed Mr. Carnes" (Resp. at 13), Mr. Carnes is licensed to practice law in Illinois – a fact Plaintiff recognizes. *See id.* at 11 ("Mr. Carnes, who was licensed to practice law in Illinois in October 2013. . . ."); Carnes Decl. ¶ 14; Dkt. No. 40-1 (Certificate of Admission to the Bar of Illinois). Mr. Carnes was admitted to this District pro hac vice. *See* Pro Hac Vice Order, Dkt. No. 41. There has been no finding that Mr. Carnes illegally practiced law in this action.

### 3. Work Performed for Capital One

Plaintiff argues URS seeks fees for work performed for Capital One, which has withdrawn its Motion for Attorneys' Fees. Resp. at 17 (citing Dkt. No. 67-16 (time keeping records for Rock Fusco & Connolly, LLP ("RFC Records")). Instead of identifying specific time entries that support her argument, Plaintiff cites generally to billing records for Rock Fusco & Connolly, LLC that span from January 1, 2015 through August 15, 2017. *See, e.g.*, RFC Records at 4 ("Conduct phone call with Janet DeYoung regarding Capital One's tender of defense. - 0.3. Send email to Capital One's counsel regarding the same. - 0.1."). It is entirely reasonable for URS' counsel to consult with a co-defendant's counsel, or for URS' counsel to discuss a co-defendant's tender of defense.

Plaintiff also argues certain fees are not recoverable because "Capital One withdr[e]w[] its request for $18,750.00 for the work performed by Doll Amir & Eley, LLP." Notice of Withdrawal at 1. But neither Mr. Carnes nor URS counsel Gregory B. Thomas work at Doll Amir & Eley, and counsel from Doll Amir & Eley have not submitted time keeping records for the undersigned's consideration. *See* Carnes Decl. ¶ 2; Thomas Decl. ¶ 2; Letter. Accordingly, this Order does not address the $18,750 in fees incurred by Doll Amir & Eley.

## B. Attorneys' Fees

The undersigned previously found Plaintiff and her counsel acted in bad faith and sought to harass URS. Order at 5-12. As such, the undersigned only considers the amount of the fee

3

request.

Reasonable attorneys' fees are generally based on the traditional "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). *See Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). A reasonable fee is determined by multiplying (1) "the number of hours reasonably expended on the litigation" by (2) "a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The lodestar amount may also be adjusted based on an evaluation of the factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), which have not been subsumed in the lodestar calculation. *See Fischer*, 214 F.3d at 1119 (citation omitted).

a.      *Reasonableness of Hourly Billing Rate*

To determine the appropriate lodestar amount, courts must first assess the reasonableness of counsel's claimed hourly billing rate. *Credit Managers Ass'n of S. Cal. v. Kennesaw Life & Accident Ins. Co.*, 25 F.3d 743, 750 (9th Cir. 1994). In doing so, courts look to the prevailing market rates in the relevant community for similar work by attorneys of comparable skill, experience, and reputation. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Generally, the relevant community is the forum where the district court sits, which in this case is the Northern District of California. *Id.*

Mr. Carnes is an attorney with RFC and has been admitted to practice law since October 2013. Carnes Decl. ¶¶ 2, 14. Five other RFC attorneys also worked on this litigation: partner Matthew P. Connelly, staff attorney Meg. L. McNair, associates Patrick W. Chinner and Michael J. Hornback, and former staff attorney Stephen Kienzle. *Id.* ¶ 19. URS requests an hourly rate of $250 per hour for each RFC attorney. Carnes Decl. ¶ 15.

Mr. Thomas is a shareholder with Boornazian, Jensen & Garthe ("BJ&G") and has been practicing law since 2005. Thomas Decl. ¶ 2; *see id.* ¶ 6. BJ&G's time keeping records identify other BJ&G attorneys who worked on this matter as Lauren O. Miller, Adam A. Vukovic, and Sophia V. Cohn. Dkt. No. 67-1 at 6; Dkt. No. 67-2 at 3; Dkt. No. 67-3 at 3; Dkt. No. 67-5 at 2; Dkt. No. 67-12 at 2; Dkt. No. 67-13 at 2; Dkt. No. 67-14 at 3; Dkt. No. 67-15 at 4. URS requests an hourly rate of $200 for BJ&G attorneys. Thomas Decl. ¶ 4.

The requested rates are reasonable for Mr. Carnes, Mr. Thomas, Mr. Connelly, Ms.

McNair, Mr. Chinner, Mr. Hornback, and Mr. Kienzle given their positions and experience.  *See*

*Clear-View Techs., Inc. v. Rasnick*, 2015 WL 13387593, at *3 (N.D. Cal. Dec. 18, 2015) (finding

hourly rate of $325 reasonable for attorney with approximately four years of experience and $520

reasonable for former shareholder); *Gutierrez v. Wells Fargo Bank, N.A.*, 2015 WL 2438274, at *5

(N.D. Cal. May 21, 2015), *appeal dismissed* (Oct. 30, 2015) (awarding attorneys' fees for partners

who billed between $475 and $975 and associates who billed between $300 and $490);

*Schueneman v. 1st Credit of Am., LLC*, 2007 WL 1969708, at *3 (N.D. Cal. July 6, 2007) (finding

rate of $250 per hour reasonable for attorney with four years of experience).

But neither URS' Motion, its declarations thereto, nor its time keeping records describe

Ms. Miller's, Mr. Vukovic's, or Ms. Cohn's positions or experience.  Without more information,

the undersigned cannot fully evaluate whether an hourly rate of $200 is reasonable for these

attorneys.

        b.     *Reasonableness of Hours Billed*

"[A] party seeking attorneys' fees [also] bears the burden to "document[ ] the appropriate

hours expended."  *Hensley*, 461 U.S. at 437.  To meet that burden, the moving party must submit

detailed records justifying the hours that have been expended.  *Chalmers v. City of Los Angeles*,

796 F.2d 1205, 1210 (9th Cir. 1986).  Courts may reduce the hours in their discretion "where

documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if

hours expended are deemed excessive or otherwise unnecessary."  *Id.*

Mr. Carnes declares he and the other attorneys at his firm billed 182.5 hours over the

course of this action.  As national counsel for URS, Mr. Carnes' work on this litigation has

included engaging in settlement discussions; engaging in discovery, including deposing Plaintiff;

drafting and editing legal documents; serving as liaison for URS to Mr. Thomas and Connie Y.

Tcheng, counsel for Capital One; conducting legal research; preparing the Motion for Attorneys'

Fees; and attending mediation.  Carnes Decl. ¶¶ 4-12, 18.  Mr. Connelly's, Ms. McNair's, Mr.

Chinner's, Mr. Hornback's, and Mr. Kienzle's work included performing legal research, editing

legal documents, consulting on legal strategy, and communicating with URS.  *Id.*; *see* RFC

Records.

United States District Court
Northern District of California

Mr. Thomas declares he and other attorneys at BJ&G billed approximately 75.8 hours during this action. Thomas Decl. ¶ 7. Mr. Thomas' work on this action has included drafting, reviewing, and editing legal documents; conducting legal research; ensuring compliance with Local Rules; communicating with opposing counsel; working with Mr. Carnes and Ms. Tcheng regarding case strategy; and making court appearances. *Id.* ¶ 3. A review of BJ&G's time keeping records supports this. These records also show that Ms. Miller, Mr. Vukovic, Ms. Cohn performed legal work on this matter.

Having reviewed the records, the undersigned finds the following reductions are appropriate. First, Plaintiff argues URS should not be compensated for time spent on administrative tasks. Resp. at 15. Indeed, administrative or clerical tasks are not compensable. *See Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) ("When clerical tasks are billed at hourly rates, the court should reduce the hours requested to account for the billing errors."); *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989) ("[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."); *see also Ridgeway v. Wal-Mart Stores Inc.*, __ F. Supp. 3d __, 2017 WL 4071293, at *9 (N.D. Cal. Sept. 14, 2017) (finding clerical tasks of "billing for calendaring and scheduling, scanning, securing rental cars and other travel arrangements, reviewing invoices, and downloading PDF orders onto an iPad" as non-compensable); *Darling Int'l, Inc. v. Baywood Partners, Inc.*, 2007 WL 4532233, at *5 (N.D. Cal. Dec. 19, 2007) (finding "there should be no compensation" for "purely clerical and/or secretarial tasks"; "it is not reasonable for a law firm to charge a client for the time an attorney spends on purely clerical or secretarial tasks, such as transmitting materials to a client, making travel arrangements, copying documents, setting up and taking down a war room, serving documents, coordinating a court reporter, and so forth.").

The undersigned finds the following are administrative or clerical in nature:

| Date | Timekeeper | Hours Billed | Narrative |
|------|-----------|--------------|-----------|
| 5/5/15 | PWS | 0.60 | Emails with client regarding local counsel's billing (0.1); review local counsel bill for extravagances (0.5). |
| 5/6/15 | BAC | 0.30 | Billing issue with local counsel. Review additional |

| | | | |
|---|---|---|---|
| | | | email from local. Write e-mail to opposing counsel. |
| 6/5/15 | BAC | 0.70 | Review and book travel arrangements and coordinate the same with Janet DeYoung. |
| 6/11/15 | BAC | 0.10 | Conference with Janet DeYoung by email regarding mediation logistics and travel time. |
| 6/23/15 | BAC | 0.20 | Review travel information and check in for flight. |
| 6/26/15 | BAC | 0.10 | Review and respond to correspondence from local counsel regarding issue of billing matter. |
| 7/2/15 | BAC | 0.40 | Review local counsel's bills as requested by client. - 0.2. Write email to Janet DeYoung summarizing status of bills. - 0.1. Conduct phone call with local counsel to request reduction of the same. - 0.1. |
| 7/6/15 | BAC | 0.40 | Conduct phone call with local counsel regarding his bills to be paid. Write email to Janet DeYoung regarding the same. - 0.2. Review correspondence from opposing counsel and respond to the same. - 0.2 |
| 8/27/15 | BAC | 0.40 | Review and respond to local counsel billing issue on Forto. - 0.2.  Conduct phone call with local counsel regarding billing issue. - 0.2. |
| 9/8/15 | BAC | 0.70 | Review email correspondence from local counsel regarding ongoing billing issue. - 0.1. Respond to the same and write separate response to Janet DeYoung regarding billing issue. - 0.2. [ ] Exchange email correspondence with Janet DeYoung regarding local counsel billing issue. - 0.2. Conduct phone call with Janet DeYoung regarding local counsel billing issue and write response to local counsel regarding the same. - 0.2. |
| 9/28/15 | BAC | 0.10 | Review billing email inquiry from local counsel and Janet DeYoung. |
| 2/15/16 | BAC | 0.90 | Review email correspondence from Janet DeYoung requesting detailed travel budget analysis.  Draft the same for review of Matt Connelly.  Review response from Janet DeYoung concerning deposition of Plaintiff; strategy for the same; and travel arrangements. Write reply to the same advising client of need for depositions. Review travel arrangements for deposition in Oakland, California, and write email to Janet DeYoung concerning the same. |
| 2/18/16 | BAC | 0.30 | Research travel arrangements for attending deposition of Simonette Forto.  Correspond with opposing counsel concerning the same. |
| 2/19/16 | BAC | 1.0 | Review, alter, and finalize travel arrangements to San Francisco for deposition of Plaintiff. |
| 2/26/16 | BAC | 3.10 | Review case status.  Review and respond to settlement offers from opposing counsel. Conduct |

|  |  |  | lengthy conference call with Janet DeYoung concerning the same. Write followup settlement correspondence to opposing counsel. Review and finalize travel plans concerning the same. Prepare documents and revise travel arrangements to attend deposition of Simonette D. Forto. |
|---|---|---|---|

Descriptions for work performed on February 15, 18, and 26, 2016 indicate Mr. Carnes performed both legal and administrative work. However, nothing in these descriptions allows the undersigned to distinguish the time spent Mr. Carnes spent on legal work from time spent on administrative tasks such as reviewing and finalizing travel plans. The undersigned therefore reduces the number of hours worked of these dates – 4.30 hours – by half to account for the administrative work for a total of 2.15 hours. As such, RFC attorneys spent a total of 7.15 hours on non-compensable administrative tasks; the undersigned deducts these hours from the requested fees.

In addition, as noted earlier, URS does not describe Ms. Miller's, Mr. Vukovic's, or Ms. Cohn's qualifications, and the undersigned cannot determine whether their requested hourly rate of $200 is reasonable. Neither Ms. Miller, Mr. Vukovic, nor Ms. Cohn appeared in this action. *See* Docket (listing only Mr. Carnes, Mr. Thomas, and Ms. Tcheng as counsel of record for URS and Capital One). It is URS's burden to prove the requested fees are reasonable. *See Harris v. Maricopa Cty. Superior Court*, 631 F.3d 963, 971-72 (9th Cir. 2011) ("[I]n cases involving attorneys fees generally, the burden of establishing entitlement to an attorneys fees award lies solely with the claimant." (internal quotation marks and brackets omitted)). Because URS has failed to do so, despite having had two opportunities to provide this information, a deduction of Ms. Miller's, Mr. Vukovic's, and Ms. Cohn's hours is appropriate. Based on BJ&G's time keeping records, Ms. Miller, Mr. Vukovic, or Ms. Cohn spent a total of 23 hours and Mr. Thomas spent 68.1 hours working on this litigation:

| Dkt. No. | Invoice Date | Hours by Mr. Thomas | Hours by Other Attorney |
|---|---|---|---|
| 67-1 | 3/27/2015 | 18.20 | 5.70 (Miller) |
| 67-2 | 5/5/2015 | 2.20 | 7.80 (Miller) |
| 67-3 | 6/23/2015 | 3.10 | 0.30 (Miller) |
| 67-4 | 8/10/2015 | 2.80 | -- |

| 67-5 | 9/17/2015 | 0.60 | 0.20 (Miller) |
|------|-----------|------|---------------|
| 67-6 | 11/6/2015 | 8.60 | -- |
| 67-7 | 12/10/2015 | 0.70 | -- |
| 67-8 | 2/17/2016 | 5.30 | -- |
| 67-9 | 3/29/2016 | 1.00 | -- |
| 67-10 | 5/23/2016 | 4.50 | -- |
| 67-11 | 6/27/2016 | 8.40 | -- |
| 67-12 | 9/30/2016 | 0.70 | 3.30 (Vukovic) |
| 67-13 | 12/14/2016 | 0.60 | 0.50 (Vukovic) |
| 67-14 | 4/24/2017 | 5.70 | 3.80 (Cohn) |
| 67-15 | 6/8/2017 | 5.70 | 1.40 (Vukovic) |
| **TOTALS** | | **68.10** | **23** |

As such, the undersigned deducts from BJ&G 23 hours for work performed by Ms. Miller, Mr. Vukovic, and Ms. Cohn.

The undersigned otherwise finds the hours are reasonable. Plaintiff's remaining arguments are unavailing. First, Plaintiff contends counsel with RFC did not contemporaneously maintain billing records. Resp. at 15-16. Plaintiff bases this contention on billing entries dated June 26, 2015; July 14, 2015; and April 18, 2017. *Id.* at 16; *see* RFC Records at 6-7, 17. On June 26, 2015, Mr. Chinnery "[d]iscuss[ed] mediation strategy with Brandon Carnes." RFC Records at 6. Plaintiff contends "[t]he mediation took place on June 24, 2015, two days prior to this entry. Discussing mediation strategy after mediation has taken place does not seem logical." Resp. at 16. On July 14, 2015, Mr. Carnes "[r]eviewed and respond[ed] to email from local counsel regarding extension of time to answer the complaint." RFC Records at 7. Plaintiff argues URS and Capital One filed their answers four months prior to this discussion. Resp. at 16; *see* Capital One Answer, Dkt. No. 18; URS Answer, Dkt. No. 26. On April 18, 2017, Mr. Carnes held a "[c]onference with Janet DeYoung concerning stipulation of protective order." RFC Records at 17. Plaintiff asserts "[t]he only possible reason to discuss a protective order would have [been] the protective order filed by URS on October 13, 2015." Resp. at 16; *see* Dkt. No. 35 (Mot. for Protective Order).

In so arguing, Plaintiff appears to contend that is unreasonable to discuss anything that has already occurred. This argument lacks merit. The mediation was unsuccessful. *See* Joint Status Repor at 2, Dkt. No. 32. It would be reasonable for counsel to discuss what happened at the mediation and to debate further mediation efforts. Similarly, the fact that URS filed a protective order and answer does not, in and of itself, preclude any future discussions about these documents.

It would be, for instance, reasonable for counsel to discuss with Ms. DeYoung, URS' Manager of the Legal Department, the applicability of the protective order or the necessity of any modifications; it also would be reasonable to discuss amending the answer.

Second, Plaintiff argues "URS should not be awarded fees for duplicative billing[.]"  Resp. at 17.  As an example of "duplicative billing," Plaintiff cites "URS' requests for this court to grant 31 hours or $9,500 for work performed by Mr. Carnes and Mr. Thomas in responding to Plaintiff's request for production of documents."  *Id.*  Plaintiff does not explain how this work was "duplicative."  Rather, she appears to contend that taking 31 hours to respond to "18 Request[s] for Admissions, 18 Requests for Production of Documents and 20 Special Interrogatories for a total of 56 discovery requests" is excessive.  *Id.*; *see id.* ("These requests were not so numerous as to warrant 31 hours of work.").  The undersigned disagrees.  Even discounting any time spent on discovery propounded on Capital One, it is entirely reasonable to expect counsel to spend 31 hours on the aforementioned discovery propounded on URS.[4]  *See Signature Networks, Inc. v. Estefan*, 2005 WL 1249522, at *10 (N.D. Cal. May 25, 2005) ("Attorneys preparing discovery responses must review the requests and are entitled to research whether the discovery is appropriate.  In addition, the attorneys must confer with their client regarding responses, can confer with colleagues regarding preparation of the responses, and must carefully prepare accurate responses.").

c.      *Lodestar*

"Section 1927 authorizes the taxing of only excess costs incurred because of an attorney's unreasonable conduct; it does not authorize imposition of sanctions to reimburse a party for the ordinary costs of trial."  *United States v. Associated Convalescent Enters., Inc.*, 766 F.2d 1342, 1347-48 (9th Cir. 1985).  Moreover, § 1927 "applies only to unnecessary filings and tactics once a lawsuit has begun."  *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996).  "[Section] 1927 cannot be applied to an initial pleading."  *Id.*  "Once counsel is or should be aware of the impropriety of his or her conduct, the costs, expenses, and attorneys' fees for any

_____

[4] In addition, there were "12 Requests for Admissions, 18 Requests for Production of Documents and 19 Special Interrogatories for a total of 49 discovery requests to Capital One[.]"  Resp. at 17.

10

subsequent proceedings may be considered to be excess expenses and counsel may be required to personally pay them under § 1927." *Cotterill v. City & Cty. of San Francisco*, 2010 WL 1223146, at *6 (N.D. Cal. Mar. 10, 2010), *report and recommendation adopted*, 2010 WL 1910528 (N.D. Cal. May 11, 2010), *aff'd in part, remanded in part on other grounds sub nom. Haynes v. City & Cty. of San Francisco*, 474 F. App'x 689 (9th Cir. 2012).

The Rosenthal Act imposes no such limitation on awarding attorneys' fees. *See* Cal. Civ. Code § 1788.30(c) ("[R]easonable attorney's fees may be awarded to a prevailing creditor upon a finding by the court that the debtor's prosecution or defense of the action was not in good faith."). The undersigned found attorneys' fees were appropriate under both § 1927 and the Rosenthal Act. It therefore need not determine at what point the unnecessary filings began; the Rosenthal Act encompasses any attorneys' fees incurred before that point.

Accordingly, the undersigned finds URS is entitled to compensation for (1) 174.35 hours of work performed by RFC[5] at a rate of $250 per hour, for a total of $43,837.50; and (2) 68.10 hours of work performed by BJ&G[6] at a rate of $200 per hour, for a total of $13,620.

### CONCLUSION

For the foregoing reasons, the undersigned **ORDERS** Plaintiff and her counsel to jointly and severally pay URS a total of $57,457.50 as described above. Payment to URS shall be made no later than **January 31, 2018**.

**IT IS SO ORDERED.**

Dated: December 5, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge

---

[5] 182.5 hours less 7.15 hours for administrative work.

[6] That is, for work performed only by Mr. Thomas.

11